2019 IL App (1st) 181426

No. 1-18-1426

Opinion filed September 5, 2019

Fourth Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| NBC SUBSIDIARY (WMAQ-TV) LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 17 CH 09589 |
| | ) | |
| THE CHICAGO POLICE DEPARTMENT, | ) | Honorable |
| | ) | Neil H. Cohen, |
| Defendant-Appellant. | ) | Judge, presiding. |
| | ) | |

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Presiding Justice Hoffman and Justice Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff, Chicago-based NBC Subsidiary (WMAQ-TV) LLC (WMAQ), sued defendant, the Chicago Police Department (CPD), seeking disclosure under the Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 2016)) of records related to the 2014 fatal shooting of 16-year-old W.R. by police officers.

¶ 2     The circuit court granted WMAQ's partial summary judgment motion but denied CPD's cross-motion for summary judgment. The court ruled that the records concerning the

investigation of W.R. for a criminal offense were exempt from disclosure under FOIA due to confidentiality provisions applicable to the law enforcement records of minors pursuant to the Juvenile Court Act of 1987 (Act) (705 ILCS 405/1-1 *et seq.* (West 2016)). However, the court ordered CPD to produce the records of the investigation of the police shooting of W.R., which were not exempt from disclosure.

¶ 3    The CPD appealed, arguing that (1) the confidentiality provisions of the Act extended to cover the police shooting investigation because the shooting victim was a minor and (2) WMAQ failed to obtain, in compliance with the Act, an order from the juvenile court authorizing the disclosure of the police shooting investigation records.

¶ 4    For the reasons that follow, we affirm the judgment of the circuit court.[1] We hold that FOIA's disclosure exemption for information prohibited from disclosure by state law did not apply to a request for records related to the investigation of police officers who fatally shot a minor because those police investigation records did not "relate to a minor who has been investigated" within the meaning of the confidentiality provisions of the Act.

¶ 5                              I. BACKGROUND

¶ 6    On July 5, 2014, Chicago police officers fatally shot 16-year-old W.R. Shortly thereafter, the superintendent of the CPD gave a statement about the shooting, disclosing that it involved a 16-year-old young man who had a number of arrests in his past and was armed with a .380 caliber automatic firearm with six live rounds. The young man was pursued for "quite some time" and eventually hid under a vehicle. He pointed the firearm at officers on numerous occasions, was shot by the officers, and subsequently expired. The incident was observed by four

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

civilian witnesses, one of whom photographed the young man standing on the corner with the firearm and sent the photo to the police afterwards. Also, the independent police review board released W.R.'s name, the date and time of the incident, and the type of incident.

¶ 7    In January 2016, WMAQ filed a FOIA request with CPD, asking for "all police reports, case reports, case incident reports and supplemental reports filed in the police shooting" of W.R. But CPD denied the request on the grounds that the Act barred the disclosure of these records to unauthorized parties. WMAQ sought review by the public access counselor of the Illinois Attorney General's office pursuant to section 9.5 of FOIA (5 ILCS 140/9.5 (West 2016)).

¶ 8    In February 2016, the public access counselor issued a nonbinding determination letter that concluded CPD violated the requirements of FOIA by withholding all of the records concerning an investigation into the police shooting death of W.R., a minor. The requested information was categorized under two separate case numbers: No. HX332686, which contained reports that labeled W.R. as the possible suspect and investigated whether he committed a criminal offense, and No. HX348081, which contained reports that listed W.R. as the victim and investigated whether his fatal shooting by police officers was a justifiable homicide. The public access counselor concluded that the former case, which concerned an alleged offense by a minor, was subject to the confidentiality provisions of the Act, which prohibited disclosure to an unauthorized party, and thus the CPD did not violate FOIA by withholding those reports. The latter case, however, concerned the conduct of police officers, and CPD did not meet its burden of demonstrating by clear and convincing evidence that these reports were exempt from disclosure. The public access counselor requested CPD to disclose the nonexempt reports, subject only to the redaction of certain specified private or personal information.

¶ 9    CPD did not produce the records concerning the investigation of the police shooting, so in July 2017, WMAQ sued CPD, seeking disclosure under FOIA of all reports filed in the police shooting of W.R. on or around July 5, 2014. Thereafter, WMAQ filed a motion for partial summary judgment and CPD filed a cross-motion for summary judgment.

¶ 10    In February 2018, the circuit court granted WMAQ's motion for partial summary judgment and denied CPD's cross-motion. The court ruled that the Act's prohibitions against disclosure to an unauthorized party of the law enforcement records related to the investigation, arrest or custody of minors did not apply to the records of the investigation of the conduct of the police officers involved in the shooting of a minor. The court concluded that W.R.'s status as a minor did not transform WMAQ's request for information about the police shooting investigation into a request for the minor's exempt confidential records. The court ordered CPD to produce all records responsive to WMAQ's FOIA request subject to redaction of any information directly related to any criminal investigation, arrest or custody of W.R.

¶ 11    In March 2018, the circuit court denied CPD's motion for reconsideration but granted CPD's motion for leave to file the records under seal so the court could conduct an *in camera* review. The court required CPD to file under seal two versions of the records, one redacted in accordance with FOIA and the other unredacted. After conducting an *in camera* review, the court, in May 2018, ruled that (1) the records concerning the criminal investigation of W.R. were not at issue in this case and would not be produced and (2) the redactions made to the records concerning the investigation of the police shooting of W.R. were proper, except that CPD must disclose the minor's name and gang affiliation.

¶ 12    In June 2018, the circuit court entered an agreed order, stating that (1) partial summary judgment was granted for WMAQ, (2) the parties agreed to stay production of the records pending the outcome of the appeal, and (3) all other issues between the parties were resolved and this order and the February 2018 order were final and appealable.

¶ 13    CPD timely appealed.

¶ 14                                    II. ANALYSIS

¶ 15    On appeal, CPD argues that the circuit court's judgment should be reversed because the plain language of the Act prohibits the disclosure to unauthorized parties of all law enforcement records that relate to minors who have been investigated, arrested, or taken into custody before their eighteenth birthday unless the juvenile court issues an order allowing the disclosure and WMAQ never obtained such an order. CPD contends that its records concerning the investigation of the conduct of the police in the fatal shooting of W.R., who was a minor and was investigated as a suspect for committing a criminal offense, are protected by the confidentiality provisions of the Act because the victim of the fatal police shooting was a minor.

¶ 16    CPD argues that its literal reading of the Act significantly advances the Act's goal to protect the privacy of juveniles by effectively eliminating the possibility that a municipal official might erroneously disclose those records due to either ignorance of the Act's requirements or a mistaken belief that the records fell within one of the Act's exceptions. CPD believes that this bright-line rule prohibiting the disclosure of all records involving juveniles who have some history of delinquency unless the juvenile court orders the disclosure ensures that municipal officials responding to FOIA requests will not be forced to choose between either risking criminal prosecution by mistakenly granting a disclosure request or exposing their employers to

substantial liability in attorney fees, costs and fines in a FOIA lawsuit by mistakenly denying a FOIA request. CPD contends that the bright-line rule allows officials to simply base their decision on whether the juvenile court has authorized the requested disclosure—granting the request if it has and denying the request if it has not.

¶ 17   Summary judgment is proper only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2016). When parties file cross-motions for summary judgment, they agree that only a question of law is involved and invite the court to decide the issues based on the record. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. We review *de novo* an order granting a motion for summary judgment. *Better Government Ass'n v. Village of Rosemont*, 2017 IL App (1st) 161957, ¶ 17. Furthermore, CPD's claim that the police conduct investigation records concerning the shooting of W.R. are exempt from disclosure under section 7(1)(a) of FOIA (5 ILCS 140/7(1)(a) (West 2016)) is a matter of statutory construction and thus also subject to *de novo* review. *Stern v. Wheaton-Warrenville Community Unit School District 200*, 233 Ill. 2d 396, 404 (2009).

¶ 18   "The cardinal rule of statutory construction, to which all other rules are subordinate, is to ascertain and give effect to the legislature's intent." *People v. Hanna*, 207 Ill. 2d 486, 497 (2003). The intent of FOIA is to support the public policy that "all persons are entitled to full and complete information regarding the affairs of government and the official acts and policies of those who represent them as public officials and public employees." 5 ILCS 140/1 (West 2016). Moreover, government has the fundamental obligation to operate openly and provide public records as expediently and efficiently as possible in compliance with FOIA. *Id.* "All records in the custody or possession of a public body are presumed to be open to inspection or copying. Any public body that asserts that a record is exempt from disclosure has the burden of proving

by clear and convincing evidence that it is exempt." *Id.* § 1.2. A public body may elect to redact exempt information when a FOIA request is made for a record that contains information that is exempt and not exempt from disclosure. *Id.* § 7(1).

¶ 19    "Information specifically prohibited from disclosure by federal or State law or rules and regulations implementing federal or State law" are exempt from disclosure under FOIA. *Id.* § 7(1)(a). FOIA further provides that "[i]nformation which is or was prohibited from disclosure by the Juvenile Court Act of 1987" shall be exempt from disclosure. *Id.* § 7.5(bb). However, in furtherance of FOIA's purpose to open public records to public scrutiny, FOIA is construed liberally while exemptions to its disclosure obligations are construed narrowly. *Kelly v. Village of Kenilworth*, 2019 IL App (1st) 170780, ¶ 29; *Rushton v. Department of Corrections*, 2019 IL App (4th) 180206, ¶ 25.

¶ 20    By comparison, the Act governs how the justice system handles minors. The overarching purpose of the Act "is to ensure that the best interests of the minor, the minor's family, and the community are served." *In re C.N.*, 196 Ill. 2d 181, 209 (2001). The purpose and policy of the Act is to provide for the protection, guidance, care, custody, and guardianship of minors who are abused, neglected, dependent, in need of authoritative intervention, addicted, or delinquent in a manner that serves the welfare of the minors and the best interests of the community. 705 ILCS 405/1-2 (West 2016). Article 5 of the Act pertains specifically to minors who have violated or attempted to violate the law. It is intended to promote a juvenile justice system to deal with the problem of juvenile delinquency that will protect the community, impose accountability on juveniles for violations of the law, and equip them to live responsibly and productively. *Id.* § 5-101(1). To effectuate this intent, its important purposes include protecting citizens from crime,

holding juvenile offenders accountable for their actions, individually assessing the juveniles to prevent further delinquent behavior, and providing due process. *Id.*

¶ 21    In support of its claimed exemption, CPD argues that sections 1-7 and 5-905 of the Act (*id.* §§ 1-7, 5-905) prohibit the disclosure to an unauthorized party of all law enforcement records involving juveniles with some history of delinquency or alleged criminal conduct unless the party obtains an order from the juvenile court. Subsections 1-7(A) and (C) of the Act state in relevant part:

"(A) Inspection and copying of *law enforcement records* maintained by law enforcement agencies *that relate to a minor who has been investigated, arrested, or taken into custody before his or her 18th birthday shall be restricted* to [enumerated classes of persons, including law enforcement officers, prosecutors, probation officers, social workers, prisoner review boards, authorized military personnel, persons engaged in *bona fide* research with the permission of the presiding judge of the juvenile court, child protection investigators of the Department of Children and Family Services, and appropriate school officials, when necessary for performing their responsibilities or discharging their official duties.]

* * *

(C) *The records of law enforcement officers*, or of an independent agency created by ordinance and charged by a unit of local government with the duty of investigating the conduct of law enforcement officers, *concerning all minors under 18 years of age* must be maintained separate from the records of arrests and

*may not be open to public inspection or their contents disclosed to the public*

*except by order of the court presiding over matters pursuant to this Act* or when

the institution of criminal proceedings has been permitted or required under

Section 5-805 or such a person has been convicted of a crime and is the subject of

pre-sentence investigation or proceedings on an application for probation or when

provided by law. For purposes of obtaining documents pursuant to this Section, a

civil subpoena is not an order of the court.

\* \* \*

(3) In determining whether the records should be available for

inspection, the court shall consider the minor's interest in confidentiality

and rehabilitation over the moving party's interest in obtaining the

information." (Emphases added.) *Id.* § 1-7(A), (C)(3).

¶ 22    Article 5 of the Act, which pertains specifically to delinquent minors, contains similar

confidentiality provisions. Subsections 5-905(1) and (5) of the Act state in relevant part:

"(1) Law Enforcement Records. *Inspection and copying of law*

*enforcement records* maintained by law enforcement agencies *that relate to a*

*minor who has been investigated, arrested, or taken into custody before his or her*

*18th birthday shall be restricted* to [enumerated classes of persons similar to those

listed in subsection 1-7(A), when necessary for the discharge of their official

duties.]

\* \* \*

(5) *The records of law enforcement officers*, or of an independent agency created by ordinance and charged by a unit of local government with the duty of investigating the conduct of law enforcement officers, *concerning all minors under 18 years of age* must be maintained separate from the records of adults and *may not be open to public inspection or their contents disclosed to the public except by order of the court* or when the institution of criminal proceedings has been permitted under Section 5-130 or 5-805 or required under Section 5-130 or 5-805 or such a person has been convicted of a crime and is the subject of pre-sentence investigation or when provided by law." (Emphases added.) *Id.* § 5-905(1), (5).

¶ 23 The best indicator of the legislature's intent "is found in the language of the statute itself [citation] and that language should be given its plain, ordinary and popularly understood meaning [citation]." *Hanna*, 207 Ill. 2d at 497-98. When the language of a statute is clear and unambiguous, it should be applied as written without resort to extrinsic aids of construction. *Poris v. Lake Holiday Property Owners Ass'n*, 2013 IL 113907, ¶ 47. Courts should construe words and phrases in light of other relevant statutory provisions (*In re C.P.*, 2018 IL App (4th) 180310, ¶ 18) and "may consider not only the language used, but also the reason and necessity for the law, the evils sought to be remedied, and the purposes to be achieved" (*Prazen v. Shoop*, 2013 IL 115035, ¶ 21).

¶ 24 However, if a plain or literal reading of a statute produces absurd results, then the literal reading should yield. *Hanna*, 207 Ill. 2d at 498. An interpretation may be within the letter of the statute but contrary to its spirit or the intention of the legislature. *Id.* When the literal

construction of a statute would lead to consequences the legislature could not have contemplated, the courts are not bound to that construction but rather must construe the statute in a manner that avoids absurd or unjust results. *Id.* "The process of statutory interpretation should not be divorced from a consideration of the 'real-world activity' [citation] that the statute is intended to regulate." *Id.* at 502. "[I]n seeking legislative intent, 'the court *will always* have regard to existing circumstances, contemporaneous conditions, the object sought to be attained by the statute and the necessity or want of necessity for its adoption.' " (Emphasis in original.) *Id.* (quoting *Smith v. County of Logan*, 284 Ill. 163, 165 (1918)).

¶ 25    If a statute is ambiguous, then a court may consider extrinsic aids of construction to determine the legislature's intent. *Young America's Foundation v. Doris A. Pistole Revocable Living Trust*, 2013 IL App (2d) 121122, ¶ 25. A statute is ambiguous when reasonably well-informed persons could interpret the statute in different ways. *Sangamon County Sheriff's Department v. Illinois Human Rights Comm'n*, 233 Ill. 2d 125, 136 (2009).

¶ 26    When the trial court issued in February and June 2018 the decisions upon which this appeal is based, the Act did not define a *juvenile law enforcement record*. However, Public Act 100-1162, which became effective December 20, 2018, added section 1-3(8.2) to the Act, defining a *juvenile law enforcement record* to include:

> "records of arrest, station adjustments, fingerprints, probation adjustments, the
> issuance of a notice to appear, or any other *records or documents maintained by*
> *any law enforcement agency relating to a minor suspected of committing an*
> *offense, and records maintained by a law enforcement agency that identifies a*
> *juvenile as a suspect in committing an offense, but does not include records*

*identifying a juvenile as a victim, witness, or missing juvenile* and any records created, maintained, or used for purposes of referral to programs relating to diversion as defined in subsection (6) of Section 5-105." (Emphasis added.) Pub. Act 100-1162 (eff. Dec. 20, 2018) (adding 705 ILCS 405/1-3(8.2)).

¶ 27 Public Act 100-1162 also amended section 1-7(A) of the Act, which currently states:

"(A) All juvenile law enforcement records which have not been expunged are confidential and may never be disclosed to the general public or otherwise made widely available. Juvenile law enforcement records may be obtained only under this Section and Section 1-8 and Part 9 of Article V of this Act, when their use is needed for good cause and with an order from the juvenile court, as required by those not authorized to retain them. Inspection, copying, and disclosure of juvenile law enforcement records maintained by law enforcement agencies or records of municipal ordinance violations maintained by any State, local, or municipal agency that relate to a minor who has been investigated, arrested, or taken into custody before his or her 18th birthday shall be restricted to the following:

[Enumerated classes of persons authorized to obtain juvenile law enforcement records.]" *Id*. (amending 705 ILCS 405/1-7(A)).

¶ 28 The plain and unambiguous language of section 1-3(8.2) limits juvenile law enforcement records to records that relate to juveniles who have committed or are suspected of committing an offense. And the current version of section 1-7(A) clarifies the confidentiality requirements for juvenile law enforcement records. Section 1-3(8.2) and the current version of section 1-7(A)

refute CPD's assertion that the confidentiality provisions of sections 1-7 and 5-905 of the Act should be read so expansively to require unauthorized persons to obtain orders from the juvenile court for the disclosure of any law enforcement records that involve in any manner juveniles who have committed or been suspected of committing an offense. The interpretation urged by CPD would not further FOIA's goals of expediently and efficiently disclosing to the public full and complete information regarding the official acts and policies of public officials and employees. Furthermore, the addition of section 1-3(8.2) to the Act and amendment to section 1-7(A) clarify the scope of the information that may not be disclosed absent a juvenile court order and, thus, should alleviate CPD's concerns about the consequences of erroneously denying or granting a FOIA request.

¶ 29    However, under Illinois's retroactivity jurisprudence, section 1-3(8.2) and the current version of section 1-7(A) would not apply to the instant case because the legislature did not clearly prescribe the temporal reach of these sections and the changes made by these sections, which clarify the scope of information that is accessible, are substantive rather than procedural. See *Perry v. Department of Financial & Professional Regulation*, 2018 IL 122349, ¶¶ 66-71.

¶ 30    Nevertheless, when viewed within the purpose of the Act and the real-world activity that the confidentiality provisions of sections 1-7 and 5-905 of the Act were intended to regulate, CPD's interpretation—that all law enforcement records that involve in any manner a minor who has been investigated, arrested, or taken into custody may not be disclosed to unauthorized parties absent an order from the juvenile court—would produce absurd results. In the case at bar, the minor was the victim of a fatal shooting by the police, and the records sought by WMAQ concern the investigation of whether that shooting was justified. Under CPD's overly broad interpretation of the scope of the Act's confidentiality provisions, records involving instances of

alleged police misconduct toward alleged or adjudicated juvenile offenders would be shielded from public view even though those confidentiality provisions are intended to serve the best interests of minors. Clearly, the confidentiality provisions of the Act are intended, not to shield possible police misconduct toward minors but rather, to protect the privacy of minors and allow them to lead responsible and productive lives unencumbered by public records of their criminal conduct. When the real-world context is taken into account, CPD's literal reading of sections 1-7 and 5-905 of the Act is clearly untenable and must be rejected.

¶ 31    Courts must view all provisions of a statutory enactment as a whole, construing words and phrases not in isolation but in light of other relevant provisions so that effect is given to the entire statutory scheme. *Southern Illinoisan v. Illinois Department of Public Health*, 218 Ill. 2d 390, 415 (2006). Moreover, the exceptions to disclosure set forth in FOIA are to be read narrowly so as not to defeat FOIA's intended purpose. *Id.* at 416. Based on the Act's purpose to protect the minor's interests in rehabilitation and confidentiality, we conclude that the plain language of sections 1-7 and 5-905 of the Act in effect prior to the December 20, 2018, amendments governs the confidentiality of law enforcement records that focus on a minor as the subject of an investigation, arrest, or custodial detention rather than reports created to assess the conduct of public employees or officials. Because the records WMAQ seeks concerning the investigation of the police shooting of W.R. do not relate to the investigation, arrest or custodial detention of a minor within the meaning of the Act's confidentiality requirements, WMAQ was not required to obtain an order from the juvenile court allowing disclosure of the sought records.

¶ 32    CPD also cites subsections 1-7(C) and 5-905(5) of the Act (705 ILCS 405/1-7(C), 5-905(5) (West 2016)), which exempt from public disclosure the records "of an independent agency created by ordinance and charged by a unit of local government with the duty of

investigating the conduct of law enforcement officers" to the extent those records concern a minor under 18 years of age. According to CPD, this language shows that the legislature intended to protect the confidentiality of all law enforcement records regarding minors, and this protection was not limited to records about the investigations of possible criminal conduct by minors but rather applied with full force to all investigation records whenever a minor is involved in a matter.

¶ 33    CPD's argument is not persuasive because the cited language was added when the Act was amended to include those independent agencies investigating police conduct among the enumerated classes of persons authorized to obtain law enforcement records related to minors who have been investigated, arrested, or detained in custody. See Pub. Act 96-419 (eff. Aug. 13, 2009) (amending 705 ILCS 405/1-7, 5-905).

¶ 34                            III. CONCLUSION

¶ 35    For the foregoing reasons, we conclude that the investigation records of the police shooting of W.R. do not relate to or concern the law enforcement records of a minor who has been investigated, arrested, or taken into custody within the meaning of sections 1-7 and 5-905 of the Act. Accordingly, the investigation records of the police shooting of W.R. are not exempt from disclosure under FOIA, and the trial court properly ordered CPD to release them to WMAQ. Accordingly, we affirm the judgment of the circuit court.

¶ 36    Affirmed.

---

**No. 1-18-1426**

---

| | |
|---|---|
| **Cite as:** | *NBC Subsidiary (WMAQ-TV) LLC v. Chicago Police Department*, 2019 IL App (1st) 181426 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 17-CH-09589; the Hon. Neil H. Cohen, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Edward N. Siskel, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Jonathon D. Byrer, Assistant Corporation Counsel, of counsel), for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Matthew Topic, Joshua Burday, and Merrick Wayne, of Loevy & Loevy, of Chicago, for appellee. |

---