**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 170158-U

Order filed February 5, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| JAMAL SHEHADEH, | ) | Appeal from the Circuit Court |
| | ) | of the 21st Judicial Circuit, |
| Plaintiff-Appellant, | ) | Kankakee County, Illinois, |
| | ) | |
| v. | ) | Appeal No. 3-17-0158 |
| | ) | Circuit No. 16-L-107 |
| SHERIFF MICHAEL DOWNEY | ) | |
| | ) | Honorable |
| Defendant-Appellee. | ) | Adrienne W. Albrecht, |
| | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justice McDade and Justice Wright concurred in the judgment.

_____

**ORDER**

¶ 1      *Held*:   (1) The trial court properly dismissed the plaintiff's complaint under the Illinois Freedom of Information Act (FOIA) pursuant to section 2-619(a)(9) of the Illinois Code of Civil Procedure because the information sought by the claimant was either not a "public record" kept by the public body or was exempt from disclosure under section 7 of the Act; (2) the trial court properly dismissed the plaintiff's claims for sanctions and for civil penalties under FOIA; (3) the plaintiff's claim for costs under FOIA was forfeited; and (4) plaintiff's motions on appeal for costs, sanctions, and a protective order were denied..

¶ 2        Plaintiff Jamal Shehadeh (Shehadeh), acting *pro se*, filed a complaint against the Sheriff of Kankakee County, Illinois (the Sheriff) pursuant to the Illinois Freedom of Information Act (FOIA, or the Act) (5 ILCS 140/1 *et seq.* (West 2016).[1]  Shehadeh had submitted several requests for documents and other materials under FOIA while he was detained at the Jerome Combs Detention Center (JCDC) in Kankakee County.  In his complaint, Shehadeh alleged that he did not receive the documents he requested in a timely manner under the Act and that the Sheriff continued to withhold such documents unlawfully.  Shehadeh later filed a motion for civil penalties under the Act to redress what he characterized as the Sheriff's willful and intentional violations of the Act.  He also filed a motion for sanctions against the Sheriff's counsel for allegedly disclosing Shehadeh's private and confidential medical information in a public filing.   After Shehadeh filed his complaint, the Sheriff provided Shehadeh with some of the documents he requested without being compelled to do so by a court order.

¶ 3         The Sheriff filed a combined 2-615 and 2-619 motion to dismiss Shehadeh's FOIA claims under section 2.619.1 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2016)).  The Sheriff argued that Shehadeh's complaint failed to state a claim under section 2-615 of the Code (735 ILCS 5/2-615 (West 2016)) because it did not identify the dates his alleged FOIA requests were made, the substance of any of such requests, or the records sought.  In addition, the Sheriff argued that Shehadeh's FOIA claims should be dismissed under section 2-619(a)(9) of the Code (735 ILCS 5/2-619(9) (West 2016)) because disclosure of the documents sought by Shehadeh would threaten the safety and security of inmates and staff at JCDC, and

---

[1] Shehadeh initially named additional defendants and raised other claims in addition to his FOIA claims, but he voluntary dismissed all such claims and defendants after the defendants filed their motion to dismiss.  All such claims were dismissed with prejudice.  Shehadeh appeals only the dismissal of his FOIA claims against the Sheriff.  Thus, throughout this Order, we identify the Sheriff as the sole defendant and we address only the dismissal of Shehadeh's FOIA claims against the Sheriff.

such documents were therefore exempt from disclosure under section 7 of the Act. The Sheriff supported his 2-619(9) motion to dismiss with an affidavit of Chad Kolitwenzew, the Chief of Corrections for Kankakee County, who testified as to various safety and security concerns he claimed were raised by Shehadeh's FOIA requests. The Sheriff also opposed Shehadeh's motions for civil penalties and sanctions. In opposition to the Sheriff's dismissal motions, Shehadeh argued, *inter alia*, that Chief Kolitwenzew's affidavit was conclusory and failed as a matter of law to satisfy the Sheriff's burden to establish by clear and convincing evidence that certain materials sought by Shehadeh were exempt from disclosure under section 7 of the Act.

¶ 4    The trial court dismissed Shehadeh's complaint under both sections 2-615 and 2-619, but it dismissed Shehadeh's complaint *with prejudice* based upon its finding that the documents sought by Shehadeh were exempt from disclosure under the Act (*i.e.,* based entirely upon the arguments raised in the Sheriff's section 2-619 motion). The trial court also dismissed Shehadeh's claims for civil penalties and sanctions. The court directed the Sheriff's counsel to submit a written Order to that effect for the court to sign and enter. Twelve days after the trial court issued its oral ruling, and one day before the trial court issued its final written judgment order, Shehadeh filed a verified motion for costs arguing that he was entitled to recover the out-of-pocket costs he incurred while pursuing his FOIA claims, including copying and postage costs. On March 6, 2017, Shehadeh filed his notice of appeal. The final judgment order that Shehadeh appealed did not address Shehadeh's motion for costs.

¶ 5    Shehadeh has appealed the trial court's judgment. While his appeal was pending, Shehadeh filed several motions with this court, including a motion for sanctions against the Sheriff's counsel, a motion for protective order under Illinois Supreme Court Rule 201(c) (Ill. S. Ct. R. 201(c) (eff. July 1, 2014), and, on July 26, 2019, a motion for leave to supplement the record on

3

appeal with the transcript of the February 15, 2017, hearing on the Sheriff's combined motion to dismiss. We took the first two motions with the case and granted Shehadeh 30 days to file the February 15, 2017, hearing transcript as a supplemental record. Thereafter, Shehadeh sought two additional extensions of time in which to file the supplemental record, which we granted. The supplemental record was filed with this court on November 19, 2019.

¶ 6                                    FACTS

¶ 7        Shehadeh is a federal inmate who was detained at JCDC from August 17, 2016, through September 12, 2016, pursuant to an Intergovernmental Agreement (IGA) between the U.S. Marshalls Service and the Kankakee County Sheriff's Office (KCSO). During the 27 days that he was detained at JCDC, Shehadeh filed 66 grievances and other requests utilizing the JCDC inmate kiosk system.

¶ 8        Some of Shehadeh's requests were styled as FOIA requests. Specifically, Shehadeh requested the following documents and other materials under FOIA: (1) a complete paper copy of his inmate file; (2) all e-mails and other correspondence to or from any KCSO employee relating to Shehadeh; (3) the IGA between the U.S. Marshals Service and the KCSO regarding the housing of federal detainees at JCDC; (4) The U.S. Marshalls Service Form 129 (an "Individual Custody/Detention Report") created and used by the U.S. Marshals Service in preparation for the entry of one of their detainees into another facility); (5) any text messages sent or received from the Sheriff's personal and work cell phones from August 15, 2016, through August 19, 2016; (6) an electronic copy of Shehadeh's booking photo; (7) paper copies of all e-mails concerning Shehadeh sent to or from the Chief of Corrections, the Assistant Chief of Corrections, the Classification officer, and any other KSCO employee from August 18, 2016, until the request is fulfilled; (8) video footage taken on August 29, 2016, between noon and 1:00

4

p.m., which Shehadeh alleged recorded an incident of excessive force that Shehadeh witnessed a sergeant commit upon another inmate in JCDC's "E-pod"; (9) copies of all reports and communications regarding the alleged August 29, 2016, incident and any records indicating the identities of all KCSO employees present at the incident, including their personnel files and any "disciplinary and misconduct info" contained therein; (10) paper copies of any records indicating what "Google" or other internet search engine queries were made by any KCSO employee during the September 11, 2016, jail shift between 3:00 p.m. and 11:00 p.m. (including records identifying which employees made the searches and from which location, the duration of time that KCSO employees spent on the internet, and any other related information); (11) the amount of hourly wages paid to KCSO employee's during the aforementioned shift, and the number of aggregate man hours worked by employees during that shift; (12) records showing KCSO "individual staff and work station response times to cell and pod call buttons and any records that can show what if any internet searches were being performed during the times call buttons went unanswered for longer than thirty seconds or were reactivated immediately after staff acknowledgement"; and (13) a copy of the electronic record of a phone call that "was placed from Flex A" in JCDC and "spanned the period of approximately 2100-2105 hours."

¶ 9        On September 14, 2016, Shehadeh filed a verified complaint against the Sheriff and other KCSO employees pursuant to FOIA. In his complaint, Shehadeh alleged that he had submitted "a number of" unspecified FOIA requests through the JCDC's inmate kiosk system and that the Sheriff had refused one of his requests without explanation, failed to timely respond to the others, and continued to unlawfully withhold public information that Shehadeh had requested. The complaint did not attach copies of any of Shehadeh's FOIA requests or otherwise identify the contents of any such request. Shehadeh sought an order compelling the release of the records

5

he requested plus civil penalties in the amount of $5,000 for each FOIA violation committed by the defendants. He later moved for sanctions under Illinois Supreme Court Rule 137 (Ill. S. Ct. R. 137 (eff. June 14, 2013) to redress what he characterized as the Sheriff's willful and intentional violations of the Act.

¶ 10    After Shehadeh filed his complaint, the Sheriff voluntarily provided Shehadeh with some of the documents he requested without being compelled to do so by a court order. On October 14, 2016, the Sheriff provided Shehadeh with his booking photograph, copies of the grievances he had filed and his grievance history report, his inmate management card, and his inmate booking card. However, the Sheriff refused to provide the other documents and materials requested by Shehadeh.

¶ 11    On October 18, 2016, the Sheriff filed a combined 2-615 and 2-619 motion to dismiss under section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2016). The Sheriff argued that Shehadeh's claims should be dismissed pursuant to section 2-615 because his complaint failed to state a cause of action under FOIA. The Sheriff further maintained that Shehadeh's claims should be dismissed under section 2-619(a)(9) for various reasons. Specifically, the Sheriff contended that: (1) Shehadeh's claims for any records already released by the Sheriff were moot; and (2) the remaining documents and other materials sought by Shehadeh were properly withheld because such documents were either unidentifiable, did not constitute "public records" kept or maintained by the Sheriff's Department, or were exempt from disclosure under section 7 of FOIA (5 ILCS 140/7 (West 2016)). The Sheriff supported his 2-619(a)(9) motion to dismiss with the affidavit of Chad Kolitwenzew, the Chief of Corrections for Kankakee County, who testified as to various safety and security concerns he claimed were raised by Shehadeh's FOIA requests.

6

¶ 12        On December 29, 2016, Shehadeh filed a response to the Sheriff's motion to dismiss and a motion for leave to file a proposed amended complaint that attached the FOIA requests at issue. Shehadeh argued that his initial complaint had alleged facts sufficient to state a cause of action under FOIA and, to the extent the trial court concluded otherwise, his proposed amended complaint cured any pleading deficiencies in his initial complaint. Thus, he contended that his complaint was not subject to dismissal under section 2-615. Shehadeh further maintained that his FOIA complaint was not subject to dismissal under section 2-619 because Chief Kolitwenzew's affidavit was conclusory and was insufficient as a matter of law to establish that any of the requested materials were exempt from disclosure under the Act.

¶ 13        Shehadeh also argued that he was entitled to civil penalties under section 11(j) of the Act (5 ILCS 140/11(j) (West 2016)) because the Sheriff had "willfully and intentionally" failed to respond to Shehadeh's FOIA requests and notify him of his review rights within 5 days, as prescribed by the Act. He sought a declaratory judgment that the Sheriff's failure to respond to his FOIA requests was willful and intentional plus penalties of "no less than $2,5000" for each of the Sheriff's allegedly willful and intentional violations of the Act.

¶ 14        Among other motions, Shehadeh also filed a motion for sanctions against the Sheriff's counsel. In that motion, Shehadeh stated that, when the Sheriff's counsel filed the affidavit of Chief Kolitwenzew in support of the Sheriff's motion to dismiss on October 17, 2016, counsel attached to the affidavit descriptions and copies of communications between Shehadeh and various KCSO employees that were sent or received via the KCSO's jail kiosk system, some of which contained Shehadeh's private and confidential medical information that was prohibited from public disclosure under FOIA and "HIPAA." Shehadeh claimed, immediately after this information was publicly filed, Shehadeh e-mailed the Sheriff's counsel and asked him to redact

7

or otherwise remove such confidential information but that, as of December 29, 2016, counsel had not done so. Shehadeh asked the court to order the Sheriff's counsel to "immediately remove [Shehadeh's] private data from public view, to "refer[] the matter to the ARDC," and to "impose a monetary sanction" against counsel.

¶ 15 The Sheriff filed a reply in support of its motion to dismiss and a response to the new motions raised by Shehadeh. The Sheriff argued that Chief Kolitwenzew's affidavit established that several of the documents and other materials sought by Shehadeh were exempt from disclosure because disclosure of such materials would threaten safety or security at JCDC, and that other documents requested by Shehadeh were either not public records maintained by the public body or were otherwise not subject to FOIA. The Sheriff further argued that Shehadeh's proposed amended complaint did not cure the deficiencies contained in his initial complaint. Moreover, the Sheriff maintained that, because the records sought by Shehadeh had either been provided to Shehadeh, were not public records, or were exempt from disclosure under FOIA, Shehadeh had failed to carry his burden of proving that the Sheriff had violated FOIA willfully or in bad faith, and was therefore not entitled to civil penalties under section 11(j) of the Act. In addition, the Sheriff argued that the trial court should dismiss Shehadeh's complaint as a sanction under its inherent authority to dismiss harassing and vexatious litigation.

¶ 16 On February 15, 2017, the trial court held a hearing on the Sheriff's motion to dismiss and on Shehadeh's outstanding motions. Shehadeh did not appear at the hearing.[2] After outlining several examples of what he characterized as Shehadeh's "profligate" litigiousness, the Sheriff urged the trial court to dismiss Shehadeh's complaint pursuant to its inherent authority to

_____

[2] Shehadeh was serving his federal sentence in a federal penitentiary at the time.

8

control its docket and to prevent frivolous filings. On the merits, the Sheriff argued that, notwithstanding his proposed amended complaint, Shehadeh had failed to state a cause of action under FOIA and that Shehadeh's failure to file a counter-affidavit in opposition to Chief Kolitwenzew's affidavit required that all of the facts asserted in Kolitwenzew's affidavit be deemed admitted. The Sheriff further argued that: (1) Chief Kolitwenzew's affidavit established that several of the materials requested by Shehadeh were exempt from disclosure for safety and security reasons; and (2) other materials sought by Shehadeh were not public records kept or maintained by the Sheriff's Department; and (3) the trial court should dismiss Shehadeh's motion for civil penalties and his "frivolous" motion for sanctions.

¶ 17    At the conclusion of the February 15, 2007, hearing, the trial court orally granted the Sheriff's motion to dismiss from the bench, stating that, "[t]he motion to dismiss with prejudice is allowed based on the unresponded to-affidavits, based on the lack of *** a statement of a cause of action. But *** it's the 2-619 aspect of your motion that causes the Court to decide to dismiss *** the complaint with prejudice." The trial court asked the Sheriff's counsel to provide the court with a written order consistent with its oral ruling. Clarifying its ruling for counsel, the trial court stated, "I'd like you to give me an order so that on review, it is apparent that the reasoning is that *** [Shehadeh's] requests fit within the [FOIA} exceptions and that *** therefore, it's substantive, rather than just you didn't state a cause of action." The trial court also denied Shehadeh's motions for civil penalties and sanctions. The transcript of the February 15, 2017, hearing does not reflect that Shehadeh's December 29, 2016, motion for leave to file an amended complaint was expressly ruled upon by the trial court.

¶ 18    On February 17, 2017, the Sheriff's counsel submitted a proposed written order pursuant to the trial court's request. Ten days later, Shehadeh filed objections to the proposed order

9

together with a proposed counteraffidavit purporting to refute Chief Kolitwenzew's claims that the materials requested by Shehadeh would threaten jail safety or security, particularly if the Sheriff redacted any protected information. Shehadeh's proposed counteraffidavit also stated that Shehadeh had received the IGA agreement between the U.S. Marshals Service and the KCSO from the Department of Justice and that it contained no data that is exempt from disclosure under FOIA except for the number of security staff needed for a prisoner escort, which the Sheriff could have easily redacted.

¶ 19    Also on February 27, 2017, Shehadeh filed a "Verified Motion for Costs" under section 11(i) of FOIA (5 ILCS 140/11(i) (West 2016). In that motion, Shehadeh contended that he was entitled to recover all out-of-pocket costs he had incurred in litigating his FOIA requests, which Shehadeh claimed amounted to $102.25 spent on copying, envelopes, and postage. Shehadeh argued that he had "substantially prevailed" within the meaning of the Act , thereby entitling him to recover reasonable costs, because: (1) "records were released by [the Sheriff] following commencement and service of the suit"; and (2) "[u]nder the catalyst theory there is a presumption of a causal nexus between service of a FOIA suit and release of records immediately ahead of a public body's Motion to Dismiss for mootness."

¶ 20    On February 28, 2017, the trial court signed and entered the written order presented by the Sheriff's counsel. The written order provided that the Sheriff's motion to dismiss was granted with prejudice "based upon the affirmative matters raised pursuant to section 2-619(a)(9) regarding mootness, [Shehadeh]'s failure to identify public records to be produced, the [Sheriff]'s lack of possession of certain records, and the exemptions claimed under 5 ILCS 140/.7 *et seq.*" Specifically, the trial court's written order stated that: (1) Shehadeh had received copies of his booking photo, grievances, and other non-exempt records, and "[t]o the extent

10

[Shehadeh]'s complaint is related to the production of these documents, this claim is dismissed as moot"; (2) "[t]o the extent that [Shehadeh]'s complaint related to [his] request for an undated phone call recording, this claim is dismissed because the request submitted by [Shehadeh] did not identify a record that could have been produced by the public body"; (3) "[t]o the extent that [Shehadeh]'s complaint relates to paper copies of internet search engine queries ("Google searches") related to Sheriff's Department employees, this claim is dismissed as the record[s] requested are not public records, as these records are data not ordinarily kept by the public body"; (4) "[a]s to the remainder of [Shehadeh]'s requested records, the evidence supplied by the [Sheriff], including the affidavit of Chief *** Kolitwenzew established by clear and convincing evidence entitlement to exceptions available to the Sheriff's Office (a public body) under section 7 of FOIA."[3] The written order then discussed several specific exceptions under section 7 that it found applied to prevent disclosure of each of the remaining categories of documents and other materials sought by Shehadeh.

¶ 21     The trial court's written order further noted that, "based upon the Sheriff's entitlement to the exemptions claimed in his motion to dismiss, coupled with the mootness of [Shehadeh]'s claims regarding non-exempt documents, [Shehadeh]'s motion for leave to file an amended complaint which attempts to cure the *facial* deficiencies articulated in [the Sheriff]'s 2-619.1 motion, will be denied."

¶ 22     Moreover, the trial court's written order denied several of Shehadeh's other pending motions, including his motion for civil penalties under the Act.  In support of the latter ruling, the trial court's written order stated that Shehadeh had failed to meet his burden to prove that the

_____

[3] The trial court's written order further noted that Shehadeh had "failed to file a counteraffidavit in his response" to the Sheriff's motion to dismiss "and therefore the evidentiary facts contained within [Chief Kolitwenzew's] affidavit shall be deemed admitted."

11

Sheriff had violated the Act willfully or in bad faith in responding (or in failing to timely respond) to his FOIA requests. Thus, the court held that Shehadeh was not entitled to civil penalties under section 11(j) of the Act. The trial court's final written order did not address Shehadeh's verified motion for costs, which Shehadeh had filed twelve days after the trial court's oral ruling and one day before the court entered its final written order.

¶ 23 On March 3, 2017, Shehadeh filed a "supplement" to his objections to the trial court's order attaching a redacted copy of the IGA between the U.S. Marshals service and the Kankakee County Detention Center that Shehadeh claimed to have received from the United States Department of Justice. Shehadeh argued that the redacted IGA agreement "clearly contains some non-exempt data."

¶ 24 Three days later, Shehadeh filed his notice of appeal of the trial court's February 28, 2017, final judgment order.

¶ 25 While this appeal was pending, Shehadeh filed several motions in our appellate court. We denied some of his motions, but we took the following two motions with the case: (1) Shehadeh's June 16, 2016, renewed motion for sanctions against the Sheriff's counsel based upon allegedly false statements contained in certain of counsels' sworn certificates of service; and (2) Shehadeh's July 26, 2019, motion for a protective order barring the public disclosure of certain communications regarding his confidential medical information that the Sheriff had attached to Chief Koliwenzew's affidavit and filed with the court. We also granted Shehadeh's motion for leave to supplement the record on appeal with the transcript of the trial court's February 15, 2017, hearing on the Sheriff's combined 2-615/2-619 motion to dismiss Shehadeh's complaint, and Shehadeh's request for additional time to do so. We granted Shehadeh 30 days (*i.e.*, until September 27, 2019) to file the hearing transcript as a supplemental record. Shehadeh

12

subsequently sought, and we granted, two additional extensions of time to file the supplemental record, which was filed with our court on November 19, 2019.

¶ 26                                            ANALYSIS

¶ 27                    I.  The dismissal of Shehadeh's complaint under section 2-619

¶ 28        In this appeal, Shehadeh argues that the trial court erred in dismissing his FOIA complaint.  The trial court dismissed Shehadeh's FOIA complaint with prejudice under section 2-619(a)(9) of the Code.  That section allows involuntary dismissal of a claim that is "barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2– 619(a)(9) (West 2016)).  An "affirmative matter" is "something in the nature of a defense that negates the cause of action completely."  (Internal quotation marks omitted.)  *Watkins v. McCarthy*, 2012 IL App (1st) 100632, ¶ 10.  If the "affirmative matter" asserted is not apparent on the face of the complaint, the motion must be supported by affidavit. *Kedzie and 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993).  By presenting adequate affidavits supporting the asserted defense (*i.e.*, affidavits that satisfy the requirements of Illinois Supreme Court Rule 191), the defendant satisfies the initial burden of going forward on the motion.  *Id.*  The burden then shifts to the plaintiff.

¶ 29        To defeat a properly-supported motion to dismiss under section 2-619(a)(9), the plaintiff must establish that the defense is unfounded or requires the resolution of an essential element of material fact before it is proven. *Id.*  The plaintiff may do so by "affidavit[ ] or other proof." *Id.* "A counteraffidavit is necessary, however, to refute evidentiary facts properly asserted by affidavit supporting the motion else the facts are deemed admitted." *Id.*  If, after considering the pleadings and affidavits, the trial judge finds that the plaintiff has failed to carry the shifted burden of going forward, the motion may be granted and the cause of action dismissed. *Id.*  We

13

review a trial court's dismissal of a complaint under section 2-619(a)(9) *de novo*. *Watkins*, 2012 IL App (1st) 100632, ¶ 10.

¶ 30   In this case, the trial court ruled that Shehadeh's FOIA claims were defeated by various affirmative matters established by Chief Kolitwenzew's affidavit. We address the trial court's rulings as to each of the categories of documents and other materials requested by Shehadeh, and Shehadeh's challenges to each of those rulings, in turn below.

¶ 31                     A. Materials already produced to Shehadeh

¶ 32   Prior to the trial court's ruling on the Sheriff's motion to dismiss, Shehadeh had already received copies of his booking photo, grievances he sent via the JCDC's kiosk system, and other non-exempt records. It is undisputed that these documents were produced in full without redactions. The trial court ruled that, to the extent Shehadeh's FOIA complaint raised any claim for the production of those documents, such claim was "dismissed as moot." That ruling was correct. A claim is moot when no actual controversy exists or events occur which make it impossible for a court to grant effectual relief. *Dixon v. Chicago & North Western Transportation Co.*, 151 Ill. 2d 108, 116 (1992); *Duncan Publishing, Inc. v. City of Chicago*, 304 Ill. App. 3d 778, 782 (1999). Where the claimant has received what he sought in the litigation, his action should be dismissed as moot. *Turner v. Joliet Police Department*, 2019 IL App (3d) 170819, ¶ 12; *Duncan*, 304 Ill. App. 3d at 782. "[O]nce a public body provides the information requested under FOIA, even after a lengthy delay, the controversy over the public body's production of [those] documents ceases to exist," and a plaintiff's continued claim for the production of that information is moot. *Roxana Community Unit School District No. 1 v. Environmental Protection Agency*, 2013 IL App (4th) 120825, ¶ 41; see also *Turner*, 2019 IL App (3d) 170819, ¶ 12; *Duncan*, 304 Ill. App. 3d at 782. Thus, any continued claim by

14

Shehadeh to the production of the documents already provided to him by the Sheriff would be moot and would have been properly dismissed under section 2-619(a)(9). *Turner*, 2019 IL App (3d) 170819, ¶ 13 (affirming dismissal of FOIA claim as moot under section 2-619(a)(9) where plaintiff had received the information he had requested from the Joliet Police Department). In any event, Shehadeh does not appear to challenge the trial court's ruling as to documents already produced to him.

¶ 33                                    B. Internet search queries

¶ 34          Shehadeh requested "paper copies of any records indicating for the 1500 – 2300 hrs 11 September 2016 KCSO jail shift what internet 'Google' or other search engine queries were conducted, by which employee and location in the jail, duration of time spent on the internet and any other related info." He also requested aggregate man hours paid to KCSO staff members during the shift in question, and information related to staff response times during that shift. The trial court dismissed Shehadeh's FOIA claim for these documents because it held that were not "public records" ordinarily kept by a public body and were therefore outside of FOIA's purview.

¶ 35          FOIA provides that members of the public should have access to "public records." 5 ILCS 140/1 (West 2016). The Act defines "public records" to mean:

> "all records, reports, forms, writings, letters, memoranda, books, papers, maps, photographs, microfilms, cards, tapes, recordings, electronic data processing records, electronic communications, recorded information and all other documentary materials pertaining to the transaction of public business, regardless of physical form or characteristics, having been prepared by or for, or having been or being used by, received by, in the possession of, or under the control of any public body." 5 ILCS 140/2(c) (West 2016).

15

Under this definition, documents that already exist and that are in the possession of a public body are subject to disclosure under FOIA. *Hites v. Waubonsee Community College*, 2016 IL App (2d) 15083656, ¶ 75.

However, "FOIA was not designed to compel the compilation of data not ordinarily kept by the public body." *Hites*, 2016 IL App (2d) 150836, ¶ 75; see also *Chicago Tribune Co. v. Department of Financial and Professional Regulation*, 2014 IL App (4th) 130427, ¶ 34; *Kenyon v. Garrels*, 184 Ill. App. 3d 28, 32 (1989). If responding to the plaintiff's FOIA request would require the public body to create a new document, rather than produce an existing document kept or maintained by the public body, the public body need not respond. *Hites*, 2016 IL App (2d) 150836, ¶¶ 75-79; see also *Chicago Tribune Co.*, 2014 IL App (4th) 130427, ¶¶ 32, 36 (defendant in a FOIA action was not required to compile the number of initial claims and complaints received against licensed physicians where the defendant did not maintain a record of the requested number of claims). FOIA does not require a public body to answer "general inquiry questions" posed by the plaintiff that are "more akin to an interrogatory in a civil action than a request for records under FOIA." *Hites*, 2016 IL App (2d) 150836, ¶ 75; see also *Chicago Tribune Co.*, 2014 IL App (4th) 130427, ¶¶ 32, 36.

¶ 37    Here, Chief Kolitwenzew swore in his affidavit that that "[n]either JCDC nor the Sheriff's Department keeps or stores search engine histories or information related to search engine searches by staff." Moreover, Shehadeh's request did not specify which staff members performed the internet search queries at issue, or upon which computers or other electronic devices such searches were performed. Thus, Shehadeh's request would have required the Sheriff's Department to examine unspecified electronic devices in order to compile data

16

regarding unspecified employees' internet searches that was not kept by the JCDC or by the Kankakee County Sheriff's Department. This would have required the Sheriff's department to create new documents responsive to Shehadeh's request. Accordingly, the trial court did not err when it dismissed Shehadeh's claims for these documents based on its finding that they were not public records kept by the Sheriff. *Hites*, 2016 IL App (2d) 15083656, ¶¶ 75-79; *Chicago Tribune Co.*, 2014 IL App (4th) 1304278, ¶¶ 32, 36; *Kenyon*, 184 Ill. App.3d at 32.

¶ 38        Shehadeh argues that he established with his counteraffidavit (at ¶ 10) that the KCSO did have possession and control of its employees' internet search records. We disagree. Shehadeh did not file his counteraffidavit until twelve days after the trial court issued its oral ruling dismissing his complaint, and one day before the trial court entered its final written judgment order presented by the Sheriff. The trial court disregarded Shehadeh's counteraffidavit and ruled in its final order that that Shehadeh had "failed to file a counteraffidavit in his response" to the Sheriff's motion to dismiss "and therefore the evidentiary facts contained within [Chief Kolitwenzew's] affidavit shall be deemed admitted." However, even assuming *arguendo* that Shehadeh's proposed counteraffidavit was timely filed and should have been considered by the trial court (an issue we do not decide), the counteraffidavit fails to rebut Chief Kolitwenzew's sworn statement that neither JCDC nor the Sheriff's Department keeps or stores search engine queries or information related to search engine searches performed by staff. In Paragraph 10 of his counteraffidavit, Shehadeh avers that "[t]he Kankakee County Sheriff's Office does have records of its employees' internet use, including what search engine queries were conducted." Shehadeh asserts that he knows this because he "studied computer engineering in college" and is "aware that the individual computer terminals upon which these activities were conducted store this data by default." However, Shehadeh does not claim to have personal knowledge of the

17

particular computers used at the JCDC or of KCSO's policies regarding the storage of internet search data on such computers. Thus, Shehadeh's proposed counteraffidavit fails to meet the mandatory requirements of Illinois Supreme Court Rule 191(a) (Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013)), which provides that "affidavits submitted in connection with a motion for involuntary dismissal under section 2-619 of the Code of Civil Procedure *** shall be made on the personal knowledge of the affiants," and it does not competently allege any evidentiary facts rebutting Chief Kolitwenzew's statements (which were based on Chief Kolitwenzew's personal knowledge).[4]

¶ 39                                    C.  Phone Call

¶ 40          On September 11, 2016, Shehadeh sent a FOIA request via the JCDC's kiosk system requesting an electronic recording of a phone call that he claimed was placed from a phone in "Flex A" "from 2100 to 2105 hours." Shehadeh did not identify the date on which this phone call was allegedly made. The trial court ruled that any FOIA claim based on such an alleged phone call was "dismissed because the request submitted by [Shehadeh] did not identify a record that could have been produced by the public body." A FOIA request must reasonably identify a public record and may not merely ask to inspect or copy general data or vaguely identified information. *Chicago Tribune Co.*, 2014 IL App (4th) 130427, ¶ 33. Here, Shehadeh's initial request for a copy of an undated phone call did not sufficiently identify a record capable of production, and the trial court properly dismissed the request on that basis under section 2-

---

[4] In his appellate briefs, Shehadeh also argues that the Sheriff could have satisfied his FOIA request by "furnish[ing] him with a data dump from the browser histories for the time requested," which would contain the search engine queries Shehadeh sought. However, Shehadeh's initial FOIA request did not simply seek the histories on browsers installed on JCDV computers; rather, he sought search queries that were entered into third-party internet search engines. As noted, he failed to present any competent evidence rebutting Chief Kolitwenzew's sworn statement that such information is not kept or maintained by the KCSO.

18

619(a)(9). In any event, Shehadeh does not challenge the trial court's dismissal of this particular FOIA request on appeal and has apparently abandoned the request.

¶ 41     D.  Whether certain materials were exempt from disclosure under section 7 of the Act

¶ 42     Based upon sworn statements in Chief Kolitwenzew's affidavit, the Sheriff argued that the remaining categories of materials that Shehadeh requested were exempted from disclosure under section 7 of the Act because disclosure of the materials would jeopardize jail safety and security and for various other reasons.  The trial court agreed and dismissed all of Shehadeh's remaining FOIA claims under section 2-619(a)(9) based upon various exemptions asserted by the Sheriff.  Shehadeh appeals each of the trial court's rulings, arguing that Chief Kolitwenzew's affidavit is conclusory and insufficient as a matter of law to prove by clear and convincing evidence that any of the claimed exemptions applied.  We address each of the trial court's rulings below.

¶ 43     As an initial matter, the Sheriff contends that Shehadeh has forfeited review of the trial court's dismissal of several of his FOIA requests because he failed to raise arguments as to those requests, either before the trial court or in this appeal.  However, we decline to find that forfeiture bars review of any of these issues, for two reasons.  First, forfeiture is a limitation on the parties, not the on the jurisdiction of the appellate court. *In re Marriage of Heindl*, 2014 IL App (2d) 130198, ¶ 21.  Accordingly, we may consider an issue not raised in the trial court or on appeal, particularly where, as here, the issue is one of law.  *Id.*; see *In re Marriage of Piegari*, 2016 IL App (2d) 160594, ¶ 10; see also *Turner*, 2019 IL App (3d) 179819, ¶ 20 (whether an exemption applies to a FOIA request under section 7 of the Act is an issue of statutory construction)).  Second, the Sheriff based each of its claims to a section 7 exemption on Chief Kolitwenzew's affidavit, and Shehadeh has argued (both before the trial court and on appeal)

19

that: (1) Kolitwenzew's affidavit is conclusory and insufficiently specific to establish that the Sheriff is entitled to claim any exemptions under section 7; and (2) the Sheriff has not explained why the KCSO cannot segregate exempt from non-exempt data and release the requested records with redactions, as required by section 7. Thus, we will address Shehadeh's challenges to each of the exemptions claimed by the Sheriff and applied by the trial court.

¶ 44　　All records possessed by a public body are presumed open to inspection or copying under FOIA, and a public body asserting exemption of a record must prove it is exempt from disclosure by clear and convincing evidence. 5 ILCS 140/1.2 (West 2016); *Turner*, 2019 IL App (3d) 179819, ¶ 18. To sustain its burden to prove that an exemption applies, a public body must provide a detailed explanation justifying its exemption claim, specifically addressing the requested documents in a manner allowing for adequate adversarial testing. *Id.* ¶ 20; *Williams v. Klincar*, 237 Ill. App. 3d 569, 572 (1992). Whether an exemption applies is a matter of statutory construction that this court reviews *de novo*. *Turner*, 2019 IL App (3d) 179819, ¶ 20.

¶ 45　　The trial court "shall conduct such in camera examination of the requested records as it finds appropriate to determine if such records or any part thereof may be withheld under any provision of th[e] Act." 5 ILCS 140/11(f) (West 2016). However, the court need not conduct an *in camera* review where the public body meets its burden of showing that the statutory exemption applies by means of affidavits. *Illinois Education Ass'n v. Illinois State Board of Education,* 204 Ill. 2d 456, 469 (2003); *Williams*, 237 Ill. App. 3d at 572–73. Affidavits "will not suffice if the public body's claims are conclusory, merely recite statutory standards, or are too vague or sweeping." *Illinois Education Ass'n*, 204 Ill. 2d at 469; *Williams*, 237 Ill. App. 3d at 573.

¶ 46                            1.  The USMS-129 Form

¶ 47        The trial court ruled that the U.S. Marshalls Service Form 129 (USMS-129 form)

requested by Shehadeh was exempt from disclosure under section 7(1)(e) of the Act, which

exempts "records that relate to or affect the security of correctional institutions and detention

facilities" (5 ILCS 140/7(1)(e) (West 2016)).  In his affidavit, Chief Kolitwenzew swore that he

was familiar with the USMS-129 form, which was "utilized and created by the U.S. marshals

service in preparation for one of their detainees' entry into another facility."  Chief Kolitwenzew

further swore that: (1) each federal inmate housed at JCDC has a USMS-129 form assigned to

him, which is shared with JCDC; (2) each USMS-129 form "lists specific offenses and

particularized information regarding an inmate's history of criminal offenses, threats to jail staff,

escape threats and attempts," and each form "contain[s] particularized information that is utilized

in the classification of inmates by JCDC"; (3) "these forms are uses in threat assessment" and

"handling of specific inmates."  Chief Kolitwenzew swore that [p]roviding inmates with this

form would: (1) "endanger KCSO staff, heighten the threat of escape, and potentially endanger

other inmates; and (2) provide inmates with the information that is utilized when assessing the

transportation, detention, detection, observation, and investigation of incidents regarding inmates

in Federal and State facilities."  He further averred that, "[i]f inmates knew the contents

contained on the form, inmates could potentially circumvent the observations made that

determine threat and escape assessments or intentionally interfere with effective threat

assessment levels."

¶ 48        These detailed sworn statements by KCSO's Chief of Corrections provide ample

justification for the trial court's ruling that the USMS-129 form is exempt from disclosure in its

entirety under section 7(1)(e) of the Act.  Chief Kolitwenzew provided a thorough account of the

21

specific contents of the form and, based upon those specific contents, opined that disclosure of the form would threaten security at JCDC in several specific requests (*e.g.*, by endangering KCSO staff and other innates, heightening escape risks, and enabling inmates to circumvent or interfere with threat assessments). This is not at all like the unsupported, vague, and conclusory statements that our appellate court has held insufficient to support an exemption under section 7 in other cases. See, *e.g.*, *Williams*, 237 Ill. App. 3d at 573 (defendant's affidavit was "completely inadequate" to sustain the defendant's burden of proving that requested documents were exempt from disclosure under section 7(1)(a) where the affiant merely stated in conclusory fashion that the material at issue was exempt under certain Board rules and regulations). Chief Kolitwenzew did not merely recite the statutory standards or baldly assert that an exemption applied. He provided a detailed explanation of why the documents at issue was exempt. We therefore uphold the trial court's judgment that the USMS-129 form was exempt under section 7(1)(e).[5]

¶ 49    The trial court also found the USMS-129 form exempt from disclosure under section 7(1)(b)(5) of the Act (5 ILCS 140/7(1)(b-5), which exempts "[f]iles, documents, and other data or databases maintained by one or more law enforcement agencies and specifically designed to provide information to one or more law enforcement agencies regarding the physical or mental status of one or more individual subjects." In his affidavit, Chief Kolitwenzew avers that "the USMS 129 form contains specific medical information and treatment history of inmates." This

---

[5] Shehadeh argues that the fact that he obtained a redacted copy of his USMS-129 from the Macon County Sheriff via a FOIA request defeats the Sheriff's claim that the document was exempt in its entirety. We disagree. Macon County's failure to assert any particular exemption under FOIA (which may have been the result of an oversight or some other error) is not at issue in this case. The only relevant issue is whether the Sheriff supported his claims to exemption in this case by clear and convincing evidence. As noted above, Chief Kolitwenzew's detailed affidavit met that standard.

unrebutted, sworn statement established that any portion of the form relating to the physical or mental status of an inmate was exempt and properly withheld under section 7(1)(b-5).[6]

¶ 50                     2. Correspondence among KCSO staff

¶ 51        The trial court dismissed Shehadeh's FOIA request for text messages sent or received from the Sheriff's personal and work cell phones because it held that such information is exempt from disclosure under sections 7(1)(e) (which exempts "records that relate to or affect the security of correctional institutions and detention facilities") and section 7(1)(b) (which exempts "[p]rivate information," unless disclosure is required by some other provision of FOIA or some other law) (5 ILCS 140/7(1)(b) (West 2016)).  The trial court also dismissed Shehadeh's FOIA requests for all e-mails and other correspondence among KCSO personnel and jail administrators regarding Shehadeh because it found such information exempt under sections 7(1)(e) (which exempts "records that relate to or affect the security of correctional institutions and detention facilities" ), section 7(1)(d)(v) (5 ILCS 140/7(1)(d)(v) (West 2016)) (which exempts "[r]ecords in the possession of any *** law enforcement or correctional agency for law enforcement purposes *** to the extent that disclosure would *** disclose unique or specialized investigative techniques other than those generally used and known or disclose internal documents of correctional agencies related to detection, observation or investigation of incidents of crime or misconduct, and disclosure would result in demonstrable harm to the agency or public body that is the recipient of the request"), and 7(1)(d)(vi) (5 ILCS 140/7(1)(d)(vi) (West 2016)) (which exempts "[r]ecords in the possession of any *** law enforcement or correctional agency for law

_____

[6] Because we affirm the trial court's rulings that the form was exempt under sections 7(1)(e) and 7(1)(b-5), we do not need to address the court's additional finding that the form was also exempt under section 7(1)(b)(1)(a).

enforcement purposes *** to the extent that disclosure would *** endanger the life or physical safety of law enforcement personnel or any other person").

¶ 52    Chief Kolitwenzew's affidavit provides sufficient evidence to support these rulings. In his affidavit, Chief Kolitwenzew swore that:

"Providing correspondence such as emails or text messages related to a particular inmate jeopardizes facility security by perpetuating the risk of retaliation by inmates, enabling the inmate to anticipate response times, and discloses knowledge of identification, investigation, and observation procedures related to particular inmates.

Additionally, the correspondence related to classification involves the determination of said classification, including threat assessment, risk levels, mental health observations, and other screening information that is directly related to security of the facility. This correspondence may also contain JCDC security codes, facility security bulletins, classification information, and criteria used in handling, transfer, and operational procedures."

These detailed and specific security concerns that Chief Kolitwenzew raised in connection with Shehadeh's requests for correspondence among the KCSO staff were sufficient to establish exemptions under sections 7(1)(e), 7(1)(d)(v), and 7(1)(d)(6). Moreover, Chief Kolitwenzew's statements regarding these security issues were unrebutted. Shehadeh's counteraffidavit, which was filed 12 days after the trial court issued its oral ruling dismissing Shehadeh's FOIA complaint and one day before it entered its final written order, states in conclusory fashion that: (1) none of Shehadeh's requests jeopardizes the safety or security of the jail; (2) "[e]-mails sought by [Shehadeh] that pertain to [Shehadeh] do not contain data that jeopardizes facility

24

security, enables anticipation of response times, or discloses identification, investigation, and observation procedures"; and (3) [n]one of the public records requested by [Shehadeh] contain [*sic*] security codes, facility security bulletins, classification information, and criteria used in handling, transfer, and operational procedures." However, Shehadeh made these statements without having reviewed the correspondence at issue, so the statements could not possibly have been made based upon his personal knowledge. Nor could Shehadeh's conclusory assertions that none of the documents sought would jeopardize jail security have been based on his personal knowledge. Accordingly, even if the trial court had considered Shehadeh's counteraffidavit, it would not have affected its ruling because the counteraffidavit does not competently allege any evidentiary facts that could rebut Chief Kolitwenzew's sworn statements regarding the concrete threats to JCDC security posed by the disclosure of the internal KCSO correspondence requested by Shehadeh.

¶ 53    The trial court also correctly determined that text messages and e-mails sent or received from the Sheriff's personal and work cell phones was exempt both for security reasons under section 7(1)(e) and because such correspondence constitutes "private information" exempt from disclosure under section 7(1)(b). Shehadeh cites *City of Champaign v. Madigan*, 2013 IL App (4th) 120662, 40-44, for the proposition that work-related communications on a public employee's personal electronic device are public records subject to disclosure under the Act. However, *City of Champaign* merely held that electronic communications that city officials sent to each other on their personal devices while conducting public business during a business meeting were subject to FOAI disclosure because such communications were prepared and sent by or for a public body (*i.e.*, while the meeting was in session and while the city officials were "functioning collectively as the 'public body.' ") *Id., ¶¶* 40-44. *City of Champaign* does *not*

25

hold or imply that *any* electronic communication sent or received from a public employee's personal or work-issued electronic device is subject to disclosure under FOIA, even where such communications are sent while the employee is working or where the communications relate to the employee's job functions. To the contrary, our appellate court expressly declined to reach that holding in *City of Champaign*, noting that it was the legislature's responsibility to make any such determination. *Id.* ¶ 44 ("If the General Assembly intends for communications pertaining to city business to and from an individual city council member's personal electronic device to be subject to FOIA in every case, it should expressly so state."). In any event, Shehadeh's requests were not even limited to the Sheriff's work-related e-mails, much less to e-mails the Sheriff sent or received while functioning collectively with others as a "public body." Accordingly, the trial court correctly found the correspondence at issue exempt from disclosure under FOIA, and *City of Champaign* does not require a contrary result.

¶ 54                                  3. Video footage of August 29, 2016 incident

¶ 55            The trial court further held that the video footage of an alleged August 29, 2016, incident at JCDC involving a sergeant and another inmate that Shehadeh requested, along with his requests for staff schedules and staff response times, were exempt for security reasons under sections 7(1)(e) ("security of correctional and detention facilities), 7(1)(d)(v) ("disclosure of investigatory techniques, detection, and observation of crime and misconduct"), and 7(1)(d)(vi) ("physical safety of law enforcement personnel or any other person"). These rulings were supported by Chief Kolitwenzew's affidavit, in which Kolitwenzew swore that "[a]llowing access to intra-facility security camera footage would allow inmates to view coverage angles, blind spots, response times, and security patterns of KCSO staff," and that "[a]llowing this information would increase escape risks" and "endanger KCSO staff and other inmates." These

26

specific and particularized security concerns justify the withholding of the video footage under section 7. See generally *Zander v. Department of Justice*, 885 F. Supp. 2d 1, 7 (D.D.C. 2012) (holding that the withholding of a video recording of prison inmates being extracted from their cells under section 7(F) of the federal Freedom of Information Act, which "protect[s] law enforcement officials from disclosure of information that could prove threatening to them," was "abundantly reasonable" because disclosure of the recording "presents the possibility that other prisoners will learn the methods and procedures utilized by [Board of Prisons] officials, and that this information might be used to thwart the safe application of these techniques in the future").

¶ 56　　　In his counteraffidavit, Shehadeh asserts that "[p]roviding [him] with the video footage he seeks will not allow disclosure of blind spots, response times, and security patterns." However, like other statements in his counteraffidavit dismissing any security concerns raised by Chief Kolitwenzew, these statements are wholly conclusory, were made without viewing the materials at issue, and were not based on personal knowledge. Moreover, Shehadeh also sought other particularly sensitive information, such as "records showing individual staff and workstation response times to cell and call buttons." The disclosure of this information carries obvious security risks and increases escape risks. Thus, the trial court did not err in dismissing Shehadeh's claims for these records under FOIA pursuant to section 2-619(a)(9) of the Code.

¶ 57　　　　　　　　　　4. Personnel records of KCSO employees

¶ 58　　　As noted above, Shehadeh also sought the personnel files of KCSO employees, including information regarding staff schedules, aggregate work hours, and hourly wages. The trial court found this information exempt from disclosure under section 7(1)(e-6), which exempts "[r]ecords requested by persons committed to the Department of Corrections *** or a county jail if those materials include records from staff members' personnel files, staff rosters, or other staffing

27

assignment information." (Emphasis added). 5 ILCS 140/7(1)(e-6) (West 2018). However, it appears that this exemption did not apply to the personnel files of KSCO employees at the time that Shehadeh filed his FOIA requests in September 2016. At that time, section 7(1)(e-6) exempted records from staff members' personnel files only if such records were sought by "persons committed to the Department of Corrections." It did not exempt such records from disclosure if the FOIA request were made by a person committed to a county jail, like JCDC. As the parties note, the legislature added the phrase "or a county jail" to section 7(1)(e-6) in the August 4, 2017, amendments to that section in order to afford staff members of county jails the same protections as staff members of the Department of Corrections. However, the amended provision would not appear to apply retroactively to FOIA claims filed before its enactment, because the statute does not clearly prescribe the temporal reach of the amended provision and because the amendment is substantive, rather than procedural. See *Perry v. Department of Financial & Professional Regulation*, 2018 IL 122349, ¶¶ 66-71; *NBC Subsidiary (WMAQ-TV) LLC v. Chicago Police Department*, 2019 IL App (1st) 181426, ¶ 29. Thus, the trial court's ruling that section 7(1)(e-6) exempted the FOIA requests at issue appears to have been error.

¶ 59    We do not need to decide that issue, however, because we may affirm the trial court's judgment on other grounds. We review the trial court's judgment, not its rationale, and we may affirm on any basis that the record supports, even if the trial court did not rely on that basis. *Kubicheck v. Traina*, 2013 IL App (3d) 110157, ¶ 28, n.3; *Estate of Sperry*, 2017 IL App (3d) 150703, ¶ 19, n.4. Here, the unrebutted evidence established that the personnel files sought by Shehadeh are exempt under section 7(1)(e), because disclosure of the information would threaten JCDC security, and also under section 7(1)(d)(vi), because disclosure of the information would risk the safety of KCSO law enforcement personnel and JCDC inmates. It would also be exempt

28

from disclosure under section 7(b), which protects the private information of KCSO staff. In his affidavit, Chief Kolitwenzew swore that "[a]llowing access to personnel files of KCSO staff to inmates increases the risk of retaliation by inmates, jeopardizes the personal privacy of KCSO staff, and further affects the security and safety of JCDC occupants and staff." Shehadeh's conclusory assertions to the contrary in his counteraffidavit are not based on personal knowledge and do not rebut the reasonable security concerns articulated by Chief Kolitwenzew. Chief Kolitwenzew also averred that KCSO staff personnel files "contain sensitive personal information of KCSO staff, including identifying information such as addresses and phone numbers, protected health information, and personnel records." Such information would obviously be protected from disclosure under sections 7(1)(b), which exempts "private information," and 7(1)(c), which exempts "personal" information.

¶ 60    In sum, allowing inmates unfettered access to the personnel files of correctional staff supervising their detention poses obvious risks to the safety and privacy of the correctional staff. In his Reply brief, Shehadeh asserts (without citation to authority) that he is "absolutely entitled to records concerning disciplinary matters where an adjudication of guilt on the employee's part was found and a sanction was imposed." However, Shehadeh has not claimed that any such records exist, and his FOIA request was not nearly so limited. Rather, he sought the entire personnel files of KCSO staff members. We find that the trial court did not err in dismissing Shehadeh's broad request for these files.

¶ 61                            5. IGA between the U.S. Marshals Service and KCSO

¶ 62    The trial court's final order does not address Shehadeh's FOIA request for a copy of the IGA between the U.S. Marshals Service and the KCSO, presumably because Shehadeh did not

29

raise the issue in his Response to the Sheriff's motion to dismiss his complaint.[7] Nevertheless, putting aside all questions of forfeiture, we hold that the record in this case establishes that the IGA was exempt from disclosure. In his affidavit, Chief Kolitwenzew swore that he was familiar with the IGA and noted that the IGA contains information that, if disclosed, would jeopardize facility security and threaten the safety of KCSO personnel and other federal inmates. For example, Kolitwenzew stated that the IGA contains information regarding "security transportation procedures, intake and exit procedures, custody handoff procedures, and chain-of-command structures for the handling of federal inmates." Kolitwenzew averred that the disclosing this information to inmates could "deteriorate the safety and security procedures by allowing inmates access to procedures developed in conjunction with federal authorities about the handling and care of federal inmates, which would 'irreparably harm" JCDC security,' jeopardize the safety of JCDC personnel and other inmates, and "may reveal observation and investigation techniques shared between the two agencies." These detailed and specific security risks, which were not rebutted by Shehadeh's conclusory counteraffidavit, establish that the IGA was exempt from disclosure under sections 7(1)(d)(v), 7(1)(d)(vi), and 7(1)(e) of the Act.[8]

¶ 63                                    E. Costs

¶ 64            Twelve days after the trial court issued its final written judgment dismissing Shehadeh's FOIA complaint, and one day before the court issued its final written judgement order, Shehadeh

_____

[7] Shehadeh raised the issue for the first time in his "supplemental" objections to the trial court's dismissal order, which he filed after the entry of the final written judgment order dismissing his complaint.

[8] Contrary to Shehadeh's argument, the fact that he was able to obtain a redacted version of the IGA from the U.S. Marshals Service does not rebut Chief Kolitwenzew's affidavit or undermine Kolitwenzew's credibility. Whether the federal government releases the IGA under the federal Freedom of Information Act is irrelevant to whether disclosing the IGA's contents to inmates at JCDC would be detrimental to that facility's security and therefore exempt from disclosure under section 7 of the Illinois FOIA.

filed a verified motion for costs arguing that he was entitled to recover the out-of-pocket costs he incurred while pursuing his FOIA claims, including copying and postage costs, pursuant to section 11(i) of the Act (5 ILCS 140/11(i) (West 2016)). That section provides that "[i]f a person seeking the right to inspect or receive a copy of a public record prevails in a proceeding under this Section, the court shall award such person reasonable attorney's fees and costs." *Id.* Because Shehadeh failed to obtain a ruling on his motion for costs before the trial court entered its final judgment and before Shehadeh filed his notice of appeal of that judgment, he may not raise the issue on appeal. *Rodriguez v. Illinois Prisoner Review Bd.*, 376 Ill. App. 3d 429, 432-33 (2007) (ruling that "it is the responsibility of the party filing a motion to request the trial judge to rule on it, and when no ruling has been made on a motion, the motion is presumed to have been abandoned absent circumstances indicating otherwise," and holding that the plaintiff's failure to obtain a ruling on his motion for default judgment before filing his notice of appeal "resulted in his abandonment of the motion and created a procedural default of any issue related to that motion for the purpose of appeal"); *Jackson v. Alverez*, 358 Ill. App. 3d 555, 563–64 (2005) (holding that a party was deemed to have abandoned a motion for leave to amend her complaint by filing a notice of appeal without first ensuring that the trial court had ruled on the motion for leave to amend).

¶ 65                                  F.   Civil Penalties

¶ 66         Shehadeh also argues that the trial court erred in denying his claim for civil penalties under section 11(j) of the Act (5 ILCS 140/11(j) (West 2016). That section provides that "[i]f the court determines that a public body willfully and intentionally failed to comply with this Act, or otherwise acted in bad faith, the court shall also impose upon the public body a civil penalty of not less than $2,500 nor more than $5,000 for each occurrence. In assessing the civil penalty,

31

the court shall consider in aggravation or mitigation *** whether the public body has previously been assessed penalties for violations of this Act " *Id.* Shehadeh argued before the trial court that he was entitled to penalties under this provision because the Sheriff had not responded to his FOIA requests within the 5-day time frame as required by sections 3(d), 9(a), and 9(b) of the Act.[9] However, Shehadeh did not plead facts suggesting that the Sheriff willfully violated the Act or otherwise acted in bad faith. Accordingly, the trial court denied his request for penalties.

¶ 67    Because the trial court made factual determinations in considering whether to impose civil penalties, we will affirm the trial court's decision unless it was against the manifest weight of the evidence. *Rock River Times v. Rockford Public School District 205*, 2012 IL App (2d) 110879, ¶ 48. In this case, the Sheriff produced all responsive, non-exempted documents without having been ordered to do so by the trial court. The trial court's refusal to impose civil penalties based entirely upon the Sheriff's alleged violation of section 3(d)'s 5-day deadline, absent additional evidence of willful law breaking or bad faith, was not against the manifest weight of the evidence.

¶ 68    In an effort to bolster his claim for civil penalties on appeal, Shehadeh has submitted documents on appeal purporting to show that the Sheriff has failed to properly train a FOIA

---

[9] Section 9(a) provides that a public body denying a request for public records under FOIA shall notify the requester in writing of the decision to deny the request and the reasons for the denial, including a detailed factual basis for the application of any exemption claimed, the names and titles or positions of each person responsible for the denial, the requestor's right to review by the Public Access Counselor and his right to judicial review under the Act. See 5 ILCS 140/9(a) (2016). Section 9(b) provides that, when a request for public records is denied on the grounds that the records are exempt under Section 7 of the Act, the public body's notice of denial shall specify the exemption claimed to authorize the denial and the specific reasons for the denial, including a detailed factual basis and a citation to supporting legal authority. 5 ILCS 140/9(b) (West 2016). Section 3(d) of the Act requires a public body to either comply with or deny a request for public records in writing (in the matter prescribed by section 9) "within 5 business days after its receipt of the request, unless the time for response is properly extended under subsection (e) of this Section." 5 ILCS 140/3(d) (West 2016).

32

compliance officer and has repeatedly violated the Act in responding to records requests brought by inmates. Shehadeh did not present any of this evidence before the trial court, and we will not consider it.

¶ 69                                    G. Sanctions

¶ 70        Shehadeh argues that the trial court abused its discretion in denying his motion for sanctions against the Sheriff under Illinois Supreme Court Rules 137 and 219. In response to Shehadeh's FOIA request, the Sheriff disclosed all of Shehadeh's grievances, FOIA requests, and other written correspondence with KCSO during his incarceration at JCDC. Some of this correspondence included references to Shehadeh's medical conditions and requests for treatment. The Sheriff attached all of the correspondence as an exhibit to Chief Kolitwenzew's affidavit, which it filed with the trial court without obtaining an order sealing the filing or otherwise acting to prevent non-disclosure of Shehadeh's private medical information. Shehadeh sought sanctions against the Sheriff, arguing the Sheriff's disclosure of his private medical information in a public filing violated state and federal laws, including "HIPAA" and FOIA. The trial court denied Shehadeh's motion.

¶ 71        We will uphold a trial court's denial of a motion for sanctions unless the denial constitutes an abuse of discretion. *Amadeo v. Gaynor*, 299 Ill. App. 3d 696, 701 (1998). A trial court abuses his discretion only where no reasonable person would take the view adopted by the trial court. *Id.* We find no abuse of discretion here. The parties dispute whether the Sheriff's public disclosure of the correspondence at issue violated state or federal law. Nevertheless, in response to Shehadeh's request for redaction of his private medical information from the public record, the Sheriff's counsel sent Shehadeh a letter informing him that the Sheriff was "potentially willing to agree to a joint confidentiality order" if proposed by Shehadeh. Shehadeh

33

declined this offer of accommodation and instead filed a motion for sanctions. Shehadeh cites no authority suggesting that sanctions would be appropriate under the circumstances presented in this case. Accordingly, the trial court's denial of Shehadeh's motion for sanctions was not an abuse of discretion.

¶ 72                                H. Other arguments raised by the parties

¶ 73        Because we affirm the trial court's dismissal of all of Shehadeh's claims under section 2-619(a)(9), we need not address the Sheriff's alternative arguments that dismissal was appropriate under section 2-615 or as a sanction for Shehadeh's history of "harassing and vexatious" conduct. Nor need we address Shehadeh's argument that the trial court erred by denying his motion for leave to file an amended complaint that would have cured the facial deficiencies in his initial complaint, as this argument responds to the Sheriff's contention that dismissal would have been appropriate under section 2-615 (not section 2-619).

¶ 74                                II. Shehadeh's Motions on Appeal

¶ 75        Shehadeh filed several motions on appeal, three of which were taken with the appeal. Shehadeh filed a verified application for the reimbursement of expenses on appeal under section 11(i) of the Act. We deny this motion because the claimant has not prevailed on appeal.

¶ 76        Shehadeh has also filed renewed motion for sanctions against the Sheriff's counsel. (The motion is styled as a "renewed" motion because we denied his initial motion for sanctions on appeal). Shehadeh argued that, when the Sheriff's counsel served Shehadeh with a copy of his appearance in this court, counsel misrepresented the date of service in the sworn certificate of service by indicating that the document was served before it was actually placed in the mail (as proven by the metered postage stamp and by mail tracking information later obtained by Shehadeh). The Sheriff's counsel states that this was merely a clerical error. In a letter the

34

Sheriff's counsel previously submitted to the ARRC in response to Shehadeh's request for an ARDC investigation against him, the Sheriff's counsel stated that, when serving documents that have been electronically filed, it is his firm's customary practice to serve documents by mail after the firm has received file-stamped copies from the court. Shehadeh contends that this proves that the Sheriff's counsel has a regular practice of falsifying certificates of service and that the Sheriff's argument that the erroneous date was merely a "clerical error" was false. He asks us to sanction the Sheriff's counsel on that basis.

¶ 77    We decline to do so. Contrary to Shehadeh's assertion, the Sheriff's counsel's letter to the ARDC does not establish that the Sheriff routinely and deliberately issues false certificates of service. To the contrary, the Sheriff told the ARDC that the error in the certificate of service at issue was a clerical error committed by his secretary, who had counsel sign the certificate of service on the date the appearance was e-filed and then forgot to change the date of service when a file-stamped copy of the appearance (together with the previously-dated certificate of service) was placed in the mail for service. Counsel did nothing worthy of sanctions. Shehadeh's motion for sanctions is denied.

¶ 78    Finally, as part of a "combined pleading" seeking various relief, Shehadeh filed a one-sentence motion asking us to have the aforementioned correspondence containing his private medical information "deemed non-disclosable, confidential, and protected from disclosure" pursuant to Illinois Supreme Court Rule 201(c) (Ill. S. Ct. R. 201(c) (eff. July 1, 2014)). Shehadeh cites no authority in support of this motion other than a citation to Rule 201(c), which addresses a trial court's authority to issue certain types of discovery orders. We are not a trial court, and the public filing of documents disclosed pursuant to a FOIA request during subsequent litigation of FOIA claims is not a discovery matter. Thus, Shehadeh has not submitted any

35

relevant authority supporting his motion to this court.  His motion is therefore denied.  As noted above, the Sheriff's counsel has informed Shehadeh that he is "potentially willing to agree to a joint confidentiality order" if proposed by Shehadeh.  Thus, to obtain the relief he desires, Shehadeh could either enter into an agreed protective order with the Sheriff counsel or file a motion to seal the trial court record.

¶ 79                                     CONCLUSION

¶ 80        For the reasons set forth above, the judgment of the circuit court of Kankakee County is affirmed.  Shehadeh's motions on appeal for costs, sanctions, and a protective order are denied.

¶ 81        Affirmed.  Motions on appeal for costs, sanctions, and a protective order denied.