NOTICE
Decision filed 03/22/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 220829-U

NO. 5-22-0829

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| JAMAL SHEHADEH, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Christian County. |
| | ) | |
| v. | ) | No. 22-MR-34 |
| | ) | |
| THE CITY OF TAYLORVILLE, | ) | Honorable |
| | ) | Douglas C. Gruenke, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE BOIE delivered the judgment of the court.
Justices Welch and Moore concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court properly dismissed the plaintiff's complaint under the Freedom of Information Act (5 ILCS 140/1 *et seq.* (West 2020)) because his categorical request for all communications between two police chiefs on any topic was unduly burdensome (*id.* § 3(g)) where the public body provided an affidavit attesting that most or all of these communications would be exempt from disclosure and where the plaintiff either would not or could not articulate a more focused request. Because the request amounted to a fishing expedition, the public body's burden of compliance outweighed any public interest in disclosure.

¶ 2    The plaintiff, Jamal Shehadeh, filed a complaint against the defendant, the City of Taylorville (City), under the Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 2020)), alleging that the City violated FOIA when it denied his request for copies of all the communications between the Taylorville chief of police and the chief of police for the Village of Kinkaid after January 1, 2022. The trial court dismissed the complaint with prejudice. The plaintiff appeals *pro se*, arguing that (1) communications between the two police chiefs are public records

subject to disclosure under FOIA; (2) the exemption for requests that are unduly burdensome (*id.* § 3(g)) does not apply; (3) the City was required to redact any information that was exempt and provide the remaining information to the plaintiff (*id.* § 7(1)); (4) the trial court erred in failing to conduct an *in camera* review of the requested records to determine which were exempt and which were subject to disclosure (*id.* § 11(f)); and (5) civil penalties were warranted (*id.* § 11(j)). We affirm.

¶ 3                                I. BACKGROUND

¶ 4     On March 1, 2022, the plaintiff sent the FOIA request at issue in this appeal to the city clerk of Taylorville. The record indicates the request was received on March 8, 2022. In it, the plaintiff requested paper copies of "all communications to and all communications from Dwayne Wheeler and D.J. Mathon since" January 1, 2022. Wheeler is the Taylorville chief of police and Mathon is the chief of police of the Village of Kincaid. In his request, the plaintiff stated that under the Illinois Attorney General's Public Access Opinion Number 16-006, issued in an unrelated case involving other parties on August 9, 2016, the City was required to search Wheeler's work and personal phones, email accounts, and social media accounts for communications that were responsive to his FOIA request. He requested that such a search be performed.

¶ 5     On April 5, 2022, the City's FOIA officer sent the plaintiff a letter denying that request. She explained that (1) communications sent to or from Wheeler are not "public records" within the statutory definition under FOIA (see 5 ILCS 140/2(c) (West 2020)); (2) such communications are exempt from disclosure under several provisions (see *id.* § 7(1)(b), (1)(d)(i), (1)(d)(iv), (1)(d)(v), (1)(d)(vi), (1)(d)(vii), (1)(e)); (3) the plaintiff's request was unduly burdensome because the plaintiff failed to identify which specific communications he sought that were not covered by his previous FOIA requests and because conducting the requested search would require the City's

2

police department to expend time and resources to review "numerous" communications, a burden that outweighed "any public interest for such information" (see *id.* § 3(g)); and (4) complying with the request would require the creation of a new record not ordinarily kept by the City (see *Hites v. Waubonsee Community College*, 2016 IL App (2d) 150836, ¶ 75). The FOIA officer further noted that the Public Access Opinion letter cited by the plaintiff involved different parties in another case and was not binding on the City in this case. See *Thomas v. County of Cook*, 2023 IL App (1st) 211656, ¶ 18.

¶ 6    On May 2, 2022, the plaintiff filed a *pro se* motion for leave to file a FOIA complaint.[1] The court granted that motion on May 12, and the plaintiff's complaint was filed that day. In it, he asserted that (1) none of the City's claimed exemptions were applicable; (2) the City failed to redact any exempt material pursuant to statute (see 5 ILCS 140/7(1) (West 2020)); and (3) the City did not provide a detailed legal and factual basis for its denial of his request (see *id.* § 9(a), (b)). He requested (1) a declaration that the City's withholding of the requested information was unlawful, willful, intentional, and in bad faith (see *id.* § 11(a)); (2) an order directing immediate production of the requested documents (see *id.*); (3) costs (see *id.* § 11(i)); and (4) civil penalties (see *id.* § 11(j)).

¶ 7    On June 15, 2022, the City filed a motion to dismiss, arguing that the requested communications were not public records and were exempt from disclosure under the various exemptions listed in the FOIA officer's letter. The City further argued that FOIA does not create an obligation for a public body to create records it does not ordinarily keep.

---

[1]In October 2021, a Christian County judge entered an order finding the plaintiff to be a vexatious litigant and requiring that he obtain leave of the court before filing any new cases in Christian County.

3

¶ 8    Attached to the City's motion was the affidavit of Wheeler. In it, he attested that the City does not maintain or store communications between himself and Mathon sent to or from his personal devices other than any such communications that appear on the City's website. He stated as follows:

> "Upon information and belief, Jamal Shehadeh is attempting to retrieve private *** communications from my private or work issued devices to acquire information concerning suspected or pending criminal investigations and prosecutions of persons *** and to obtain the identity of all informants and complainants that [are] used by the City's Police Department or by Kincaid's Police Department to identify, monitor, and investigate actual or potential criminal persons or activities."

Wheeler stated that releasing this type of information to jail inmates awaiting prosecution jeopardizes security in the Christian County Correctional Center. He explained that providing this information to inmates would disclose to them the identification, investigation, and observation procedures related to such inmates or the identities of informants or complainants providing information about them, thereby "perpetuating the risk of retaliation by inmates." He further explained that releasing such information to any individual under criminal investigation or facing prosecution would enable the suspect to anticipate police response times and otherwise reveal to the suspect information concerning the police department's investigation, identification, and observation procedures.

¶ 9    Wheeler went on to state that releasing information about individuals who serve as informants or complainants to third parties would increase the risk of harm to those individuals as well as the employees of both police departments who receive information from informants and complaints. Finally, Wheeler noted that the plaintiff had submitted FOIA requests to the City

4

regularly since his incarceration began in March 2021 and that both Wheeler and Mathon were involved in the investigation and criminal prosecution of the plaintiff. He stated that disclosing their communications "could obstruct or interfere with" a pending federal prosecution of the plaintiff.

¶ 10    On December 16, 2022, the court held a motion hearing. In support of its motion to dismiss, the City first argued that communications between the two police chiefs were not public records that were ordinarily kept by the City. Counsel explained that FOIA does not require public bodies to create documents with information sought by a requestor; it only requires the disclosure of existing documents. Second, the City argued that the records were exempt from disclosure under section 7(e) (5 ILCS 140/7(e) (West 2020)) for security reasons.

¶ 11    The City's attorney then called the court's attention to *Shehadeh v. Downey*, 2020 IL App (3d) 170158-U (*Downey*) as persuasive authority in support of the City's second argument. That case involved multiple FOIA requests made by the plaintiff in this case while he was an inmate in Kankakee County, including copies of all text messages sent to or from the sheriff's personal or work cell phones, paper copies of all emails concerning the plaintiff that were sent to or from certain corrections officials, and copies of all emails or other correspondence between Kankakee County Sheriff's Department employees concerning the plaintiff. *Id.* ¶ 8. The court ultimately affirmed a decision of the trial court dismissing his FOIA complaint because the requested records were exempt from disclosure under various provisions of FOIA. *Id.* ¶¶ 51-53. Counsel for the City in this case argued that the unpublished decision in *Downey* was the law of the case and that it

5

could be cited as persuasive authority under Illinois Supreme Court Rule 23(e)(1) after July 1, 2021. See Ill. S. Ct. R. 23(e)(1) (eff. Feb. 1, 2023).[2]

¶ 12    The plaintiff argued that the content of the requested documents, rather than their format, was controlling. He stated, "The public body cannot escape its obligation to have transparent business by using private phones and devices." The plaintiff went on to argue that the statements in Wheeler's affidavit concerning the security risks involved in disclosing the communications were speculative because Wheeler used "language like may or could."

¶ 13    The court asked the plaintiff to explain how his request in this case differed from the requests he made in *Downey*. In response, the plaintiff argued that section 7(e-10) was involved in that case, an exemption applicable to requests by incarcerated individuals for records that relate to other people. See 5 ILCS 140/7(e-10) (West 2020). (We note, parenthetically, that multiple exemptions were at issue in *Downey*, including many of the exemptions at issue in this case. *Downey*, 2020 IL App (3d) 170158-U, ¶¶ 47-48, 51-53, 55, 59.) The plaintiff argued, "This is different because in *Downey*, I was requesting records between administrators while I was in custody of the jail. Here, I'm requesting something outside the walls of the jail."

¶ 14    The court noted that the request at issue in this case was "even more broad" than the requests at issue in *Downey*. The court inquired, "What information could you specifically ask for between [Wheeler and Mathon]? What types of communication would be allowed to be disclosed to you? Give me an example." The plaintiff responded as follows:

---

[2]We note that under Rule 23(e)(1), only unpublished orders issued on or after January 1, 2021, may be cited as persuasive authority. Ill. S. Ct. R. 23(e)(1) (eff. Feb. 1, 2023). The *Downey* decision was issued on February 5, 2020. As such, it may not be cited as persuasive authority. Although the case could have been cited to support allegations of collateral estoppel, the City never cited it for this purpose. Nevertheless, the *Downey* decision does not play a role in our resolution of the questions before us in this appeal.

"Um, let's say the, the police chief was of one jurisdiction was conveying to the police chief of another jurisdiction a citizen's complaint about the conduct of one of their officers or somebody in the community saying, hey, you know, I saw this, this police officer cut me off in traffic and didn't use his turn signal, or I filed a complaint about some criminal conduct and nobody to showed up to investigate what I was complaining about."

The court noted that those types of documents would be held by the clerk. The plaintiff acknowledged, "They are supposed to."

¶ 15    The court then noted, "Well, it seems to me there would be more things that would be exempt than are not exempt." The court asked the plaintiff why he could not narrow his request. The court told the plaintiff, "You are struggling to tell me what information might actually be allowed to be sent to you based on your current situation and the content that you are requesting." The plaintiff replied, "That doesn't fall on my shoulders to assert and prove, Your Honor." He emphasized that he did not know what was in the communications between the two police chiefs, and he acknowledged that at least some of the communications between them were exempt from disclosure.

¶ 16    In ruling from the bench, the court stated, "I find that the *** request in this situation based on the situation of the requestor and the nature of the records being requested is most closely parallel [to] the *Shehadeh v. Downey* case." The court thus concluded that the records requested were not public records or were exempt from disclosure. Accordingly, the court indicated that the City's motion to dismiss would be granted. In a docket entry that day, the court stated that the plaintiff "has not filed a counter-affidavit; the request is similar to *Shehadeh v. Downey* and as a result, the motion to dismiss is granted with prejudice." This timely appeal followed.

7

¶ 17                                    II. ANALYSIS

¶ 18    The plaintiff argues that the court erred in dismissing his complaint because (1) the requested communications between the two police chiefs are public records under FOIA; (2) the exemption for unduly burdensome requests (5 ILCS 140/3(g) (West 2020)) does not apply; (3) the City was required to redact any information that was exempt and provide the remaining information to the plaintiff (*id.* § 7(1)); and (4) the trial court did not conduct an *in camera* review of the requested records to determine which were exempt and which were subject to disclosure (*id.* § 11(f)). The plaintiff also contends that civil penalties were warranted (*id.* § 11(j)), an issue not reached by the trial court. We reject the plaintiff's contention that the unduly burdensome exemption is inapplicable. Because we find that the court's ruling was correct on this basis alone, we need not address his remaining contentions. See *Mullins v. Evans*, 2021 IL App (1st) 191962, ¶ 25 (stating that a reviewing court may affirm the trial court's judgment on any basis appearing in the record, regardless of whether the court relied upon that basis and regardless of whether its reasoning was correct).

¶ 19    This appeal comes to us after the court's ruling on a motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2020)). In ruling on section 2-619 motions, courts must accept as true all well-pled facts in the complaint, and we must view those allegations in the light most favorable to the plaintiff. *Kucinsky v. Pfister*, 2020 IL App (3d) 170719, ¶ 33. A section 2-619 motion admits (or assumes) the legal sufficiency of the complaint, but it asserts the existence of an affirmative defense or another matter that defeats the plaintiff's claim. *Wilson v. Quinn*, 2013 IL App (5th) 120337, ¶ 11. Our review is *de novo*. *Neppl v. Murphy*, 316 Ill. App. 3d 581, 583 (2000).

¶ 20    The legislative purpose underlying FOIA is to make public records open to public scrutiny. *Chicago Tribune Co. v. Department of Financial & Professional Regulation*, 2014 IL App (4th) 130427, ¶ 20; see 5 ILCS 140/1 (West 2020). As such, the records of public bodies are presumed to be subject to disclosure. 5 ILCS 140/1.2 (West 2020). With certain enumerated exceptions, public bodies must make "all public records" available for inspection or copying. *Id.* § 3(a). Importantly, however, FOIA is not intended " 'to unduly burden public resources, or to disrupt the duly-undertaken work of any public body.' " *Sargent Shriver National Center on Poverty Law, Inc. v. Board of Education of the City of Chicago*, 2018 IL App (1st) 171846, ¶ 18 (*Shriver Center*) (quoting 5 ILCS 140/1 (West 2016)). To that end, FOIA expressly provides that public bodies are not required to comply with requests that are unduly burdensome. 5 ILCS 140/3(g) (West 2020).

¶ 21    As noted previously, the parties in this case disputed whether the communications between police chiefs requested by the plaintiff are "public records." In pertinent part, FOIA defines public records as "all records, ***, writings, [and] electronic communications *** pertaining to *** public business" that are in the possession or under the control of a public body as that term is defined under FOIA. *Id.* § 2(c). Although the statutory definition of a public body is broad (see *id.* § 2(a)), it does not include individuals such as police chiefs (see *City of Champaign v. Madigan*, 2013 IL App (4th) 120662, ¶ 30). However, police departments are public bodies within the meaning of FOIA. See *Carter v. Meek*, 322 Ill. App. 3d 266, 269 (2001) (holding that a sheriff's department is a public body under FOIA). Here, Wheeler attested in his affidavit that the City of Taylorville does not maintain copies of his communications that are sent to or from his personal electronic devices. This statement was uncontradicted.

¶ 22    We recognize that other districts of the Illinois Appellate Court have found that communications between individual public officials on their personal cell phones or other

9

electronic devices can become public records subject to disclosure under FOIA, at least under some circumstances. See *Better Government Ass'n v. City of Chicago*, 2020 IL App (1st) 190038, ¶¶ 19, 24; *City of Champaign*, 2013 IL App (4th) 120662, ¶¶ 41-43. We need not decide in this case whether we will follow these holdings of our sister courts. We also need not decide whether any of the communications at issue here would constitute public records subject to disclosure under *Better Government Ass'n* or *City of Champaign*. This is because, as noted earlier, we find that the court properly dismissed the complaint because the plaintiff's request was overly broad and unduly burdensome, and we affirm on that basis. As we will explain later, however, the fact that the plaintiff's request is for documents or records not ordinarily kept or maintained by the City is pertinent to our analysis of the burden compliance with the request would place on the City.

¶ 23    Under section 3(g) of FOIA, a public body may refuse to comply with a request for records if doing so "would be unduly burdensome for the complying public body and there is no way to narrow the request and the burden on the public body outweighs the public interest in the information." 5 ILCS 140/3(g) (West 2020). A request imposes an undue burden on a public body if it is overly broad and requires the public body to locate and review large quantities of documents that are largely unnecessary to the requestor's purpose. *Shehadeh v. Madigan*, 2013 IL App (4th) 120742, ¶ 25 (*Shehadeh*) (citing *National Ass'n of Criminal Defense Lawyers v. Chicago Police Department*, 399 Ill. App. 3d 1, 17 (2010)).

¶ 24    To invoke the "unduly burdensome" exemption of section 3(g) of FOIA, a public body must show three things: (1) that it received a categorical request calling for all records that fall within a category, (2) that there is no way to narrow the request, and (3) that the burden of compliance on the public body outweighs the public interest in the requested information. *Shriver Center*, 2018 IL App (1st) 171846, ¶ 28 (citing 5 ILCS 140/3(g) (West 2016)). The public body

must also give the requestor an opportunity to confer with it in an effort to narrow the scope of the request. *Id.* If the requestor refuses to do so, the requirement that there be no way to narrow the request may be deemed satisfied. See *id.*

¶ 25 Here, we find that all three requirements are satisfied. First, the plaintiff's request for all communications between the two police chiefs was unquestionably categorical and "patently broad on its face." See *Shehadeh*, 2013 IL App (4th) 120742, ¶ 28. The plaintiff did not even request communications related to any specific investigation or topic.

¶ 26 Second, although it does not appear that the City asked the plaintiff to narrow or clarify his request in its response,[3] when asked by the court why he could not narrow his request, the plaintiff indicated that it was not his burden to do so and that he had no way to know what information was in the communications unless the City provided him with an index listing the communications it was withholding. This is tantamount to an admission that there is no way to narrow or clarify his request.

¶ 27 Turning our attention to the final requirement—a showing that the burden of compliance on the City outweighs the public interest in disclosure—we find guidance in the First District's decision in *Shriver Center*. That case involved requests by the Shriver Center to the Board of Education of the City of Chicago (Board) for documents related to police conduct in Chicago public schools. *Shriver Center*, 2018 IL App (1st) 171846, ¶ 1. The first request sought all complaints the Board received about police officers and security guards inside Chicago public schools between 2012 and 2016. *Id.* ¶ 4. The Board responded by explaining that compliance would be unduly burdensome because (1) it did not maintain electronic databases of such

_____

[3]It is worth noting that this is one of numerous FOIA cases involving the same parties and that in at least one prior case, the plaintiff refused to narrow or clarify his request when a public body offered him the opportunity to do so. See *Shehadeh*, 2013 IL App (4th) 120742, ¶¶ 6, 32.

11

complaints and (2) the records of any such complaints would be in the form of paper files, emails, and other records that could be located at " 'any or all of the District's administrative offices and/or' " at more than 600 individual schools. *Id.* ¶¶ 4-5. The Board invited the Shriver Center to narrow or clarify its request. *Id.* ¶ 6.

¶ 28 The Shriver Center sent a second, narrower FOIA request before it received the Board's response to its first request. This time, it requested all reports involving alleged misconduct by "in-school security officers" that were entered into the VERIFY system in 2014. *Id.* ¶ 7. The Board again denied the request on the basis that compliance would be unduly burdensome. It explained that because the VERIFY system did not have a field identifying which reports involved "in-school police officers," compliance would require review of the narrative descriptions in over 600 reports. *Id.* The Board noted that it would also be required to redact any responsive reports to remove students' personal information and other information that was exempt from disclosure. *Id.*

¶ 29 In response to the Board's invitation to further narrow or clarify its request, the Shriver Center requested all reports of alleged employee misconduct entered into the VERIFY system during 2014. *Id.* ¶ 8. The Board denied this request as well, explaining that reviewing all 635 responsive reports and redacting information in them that was exempt from disclosure would be unduly burdensome. *Id.*

¶ 30 After the third denial, the Shriver Center filed a FOIA complaint against the Board. *Id.* ¶ 9. The trial court granted the Board's motion to dismiss the complaint, agreeing with the Board that the Shriver Center's requests were unduly burdensome. *Id.* ¶¶ 9-11.

¶ 31 In reviewing this ruling on appeal, the First District noted that there was no dispute that the Shriver Center's requests were categorical or that the Shriver Center refused to narrow or clarify its requests further after the Board's third denial. The court thus framed the question before it as

"whether the burden of compliance outweighed the public interest in the records sought." *Id.* ¶ 28. The court noted that the Board "provided a detailed written response" to each of the three FOIA requests (*id.* ¶ 35) and concluded that these responses provided "a clear and convincing showing of the burden compliance would place on the Board" (*id.* ¶ 39). The court went on to consider whether the trial court "erred in concluding that burden outweighed the public's interest in the records that [the] Shriver [Center] sought." *Id.*

¶ 32    In addressing this question, the Shriver Center argued that the public interest in the records it requested stemmed from " 'an alarming national trend' whereby 'primarily children of color are funneled out of public schools and into the juvenile justice system.' " *Id.* The court agreed that this was a "matter[ ] of great public concern." *Id.* However, the court found that the burden of compliance "outweigh[ed] the possibility that such a broad search would yield material that is necessary to [the] Shriver [Center]'s stated purpose." *Id.* ¶ 40. The court went on to explain that if the Shriver Center had requested records related to misconduct it had reason to suspect had occurred at a particular school or by a specific officer "or if it had focused its requests on the schools with the highest student arrest rates, the burden would be lower and the public interest higher." *Id.* ¶ 41. However, the court found that the broad requests made instead amounted to a request for "an opportunity to engage in a fishing expedition through the Board's files, in the hopes of finding that some officer or guard, in some school, engaged in some sort of misconduct that may have contributed to a school-to-prison pipeline." *Id.* The court thus affirmed the trial court's dismissal of the Shriver Center's complaint. *Id.* ¶¶ 41, 43.

¶ 33    Here, the plaintiff's request likewise amounts to a fishing expedition in hopes of finding any records that might constitute public records within the meaning of FOIA that are not exempt from disclosure. Unlike the Shriver Center, however, the plaintiff here does not even point to a

13

specific issue about which he hopes to discover information through the records he is seeking, much less an issue that is a matter of public interest. As we have discussed, when asked by the court to narrow his request, the plaintiff stated that he was not required to do so.

¶ 34     We recognize that the City did not explain the burden that compliance would impose on it in as much detail as the Board did in *Shriver Center*. Nevertheless, in the face of a request that is so vague it does not even identify a purpose for which the records are being sought, we find its explanation to be more than adequate. The City pointed out that it would need to sift through a large number of communications between two police chiefs—communications that it does not ordinarily maintain as records. It is worth noting that, because the City does not maintain copies of its police chief's communications with other police chiefs, it would first need to obtain the records, something that would obviously add to its burden of compliance. The City also stated that many or most of the communications would come within the numerous statutory exemptions applicable to law enforcement records. See 5 ILCS 140/7(1) (West 2020). Thus, much of the material would be unnecessary towards his purpose. See *Shehadeh*, 2013 IL App (4th) 120742, ¶ 25 (citing *National Ass'n of Criminal Defense Lawyers*, 399 Ill. App. 3d at 17).

¶ 35     It would have been preferable for the City to provide at least an estimate of the number of records, or the amount of time involved in obtaining and sifting through them and redacting exempt information. Nevertheless, because the plaintiff has not identified a purpose for his request or any public interest that would be served by complying with it, and because much of the material would be exempt from disclosure, we find that the City has carried its burden of demonstrating that the burden on it outweighs any nominal public interest that might, theoretically, be served by complying with the plaintiff's request.

14

¶ 36    In support of his claim that the unduly burdensome requirement does not apply, the plaintiff addresses only the last of the three requirements. He contends that the record contains "no information to weigh the alleged burden against public interest of disclosure." While we agree that the City should have provided more detailed information concerning the burden of compliance, we cannot accept this argument. As we have just explained, the plaintiff's request amounts to a request to go on a fishing expedition for any information on any topic that might be subject to disclosure.

¶ 37    Additionally, the plaintiff argues that the City erroneously "conflate[d] the § 3(g) unduly burdensome and § 3.6 voluminous requests provisions." See 5 ILCS 140/3(g), 3.6 (West 2020). We note that sections 3(g), governing the exemption for unduly burdensome requests, and section 3.6, governing voluminous requests, have overlapping application. Section 3.6 allows a public body to treat a request as a voluminous request whether the public body ultimately decides to comply with the request, assert specific statutory exemptions, or deny the request because it is unduly burdensome. See *id.* § 3.6(c)(ii), (iii), (iv). The statute simply allows a responding public body that invokes this provision to extend its deadline for response by 10 business days (*id.* § 3.6(d)), rather than the 5 days normally allowed (see *id.* § 3(e)), and to charge a fee to the requestor before copying the requested documents (*id.* § 3.6(c)(i)). Here, the City's response clearly addressed the requirements for claiming that compliance with a request is unduly burdensome. It is unclear how the plaintiff believes the City "conflated" the two provisions.

¶ 38    The plaintiff asserts, however, that the difference between sections 3.6 and section 3(g) of FOIA is "the public body's ability to identify precisely what records the request seeks," although he cites no authority in support of this proposition. He further asserts that courts have found

requests for public records to be unduly burdensome "when a public body would not know where to begin when it comes to identifying and locating the records."

¶ 39 In support of this contention, the plaintiff cites *Shriver Center* and *Greer v. Board of Education of the City of Chicago*, 2021 IL App (1st) 200429. However, neither case contains any such language, much less any language that a request is only unduly burdensome if the public body "would not know where to begin" identifying or locating requested records. Rather, as we explained earlier, the undue burden exemption applies when a request is overly broad and requires the public body to locate and review large quantities of documents that are largely unnecessary to the requestor's purpose (*Shehadeh*, 2013 IL App (4th) 120742, ¶ 25 (citing *National Ass'n of Criminal Defense Lawyers*, 399 Ill. App. 3d at 17) and where the three requirements we discussed earlier are satisfied. For the reasons we have already discussed, we find that the exemption is applicable here. As such, we conclude that the court properly dismissed the plaintiff's complaint.

¶ 40                                      III. CONCLUSION

¶ 41 For the foregoing reasons, we affirm the judgment of the trial court.

¶ 42 Affirmed.